RINDA JANE TILLEY, *Adm'x. v.* H. M. COLE *et al.*

(No. 9140)

Submitted January 21, 1941. Decided February 4, 1941.

*Worrell & Worrell,* for plaintiff in error.
*Bailey & Shannon,* for defendants in error.

ROSE, JUDGE:

The plaintiff, as administratrix of her husband, Walter Tilley, brought this action against H. M. Cole and Mrs. H. M. Cole, charging that the decedent's death resulted from the operation of an automobile owned by H. M. Cole and driven at the time by Mrs. Cole. From a directed verdict for the defendants, this writ of error resulted.

The injury inflicted upon Walter Tilley, causing his death, occurred May 22, 1939, on State Route No. 12, one-

quarter mile west of Mullens, about eight o'clock in the morning of that day. At the time, Tilley and some fifteen to twenty other employees were engaged in different assignments of maintenance and repair work on Route 12 at this location. The men were spaced at various intervals along the highway performing work on the berm or sides, but not on the paved portion of the highway. Just prior to the injury, Mrs. Cole had gone with her husband in his car to Elmore, about a mile west of the location where this work was going on, for the purpose of taking Mr. Cole to his work with the Virginian Railway Company. Mrs. Cole drove the car back over the same route, and as she approached the vicinity of the workmen, Walter Tilley, plaintiff's decedent, was engaged with another employee on the outside of the guardrail, pulling from the ground a guardrail post, by means of iron bars used as pries. Tilley and this other employee were stationed at the end of the project nearest the approach of the car. The deceased, as Mrs. Cole neared him, stepped over the guard cable onto the dirt berm between the post and the south edge of the hard surface of the road facing in the direction of the defendants' oncoming car, holding the iron bar in his hands so that it extended, or was thrust, above and over the hard surface of the highway. The headlight of the Cole car struck the end of the bar, inflicting the injury from which Tilley died two months later. The iron bar was seven feet long, and the berm from the post to the edge of the hard surface is variously estimated to be from three to five feet wide. Mrs. Cole was traveling east on the highway, which is eighteen feet wide, level and straight for a distance of seven or eight hundred feet west of the point of the accident. It is not clear from the evidence whether at the moment of impact, deceased had one end of the bar stuck into the post and was in the act of prying with it or whether he had the bar drawn back over the road in a position to strike it into the post.

It further appears that there was nothing along the highway at this point to obstruct the view of the driver of the car; that in the vicinity of the work there were two

or three pieces of road machinery; that the other men were working at various points along the side of the highway; and that the day was clear and bright.

The plaintiff alleges, among other things, that the car was being driven at an excessive rate of speed and that Mrs. Cole failed to keep a proper lookout for workmen along the road, and failed to blow her horn.

Several of the workmen, including the foreman, testified on behalf of the plaintiff. They stated that the car was traveling thirty to thirty-five miles per hour; that no warning was given of the approach of the car; and that the car traveled eighty to one hundred feet before it was stopped. The foreman also testified that deceased and one other workman had been working on the outside of this post and that just before Mrs. Cole arrived deceased stepped to the inside of the post on the berm between the post and the hard surface and "he stepped over the line and he had no more than got his feet to the ground until she struck him."

Mrs. Cole testified that on the trip past this location with her husband she did not see any workmen; that on the return she drove fifteen to twenty-five miles per hour; that she saw deceased "come across the fence and I pulled out to keep from hitting him, and did not see that he had a bar, I didn't know that he had a bar, * * *." Later, on cross-examination, she stated that she saw two men at this point and observed Tilley step over the cable "just as I was getting real close to him"; and that she did not know that she had struck the bar or that the bar had struck Tilley until after she stopped the car.

At the conclusion of the plaintiff's testimony, a motion to direct a verdict for the defendants was overruled. This motion was renewed and overruled at the conclusion of all the testimony. Three instructions asked by the plaintiff were refused. The jury did not agree, whereupon the motion for a directed verdict for the defendants was made a third time and sustained.

Was the trial court warranted in this action? Consider first the question of whether the defendant, Mrs. H. M. Cole, might be considered negligent. The plaintiff's evi-

dence is that she drove her car past these workmen at a speed of from thirty to thirty-five miles an hour, and that her speed was not decreased as she approached decedent. Mrs. Cole testifies that her speed was from fifteen to twenty-five miles per hour, and that she turned to the left when decedent crossed the guardrail. Which shall be accepted as correct? All witnesses agree that she did not blow her horn. She testifies that she saw the decedent step across the guardrail onto the berm, but did not see the crowbar in his hand, and although her headlight did in fact hit the crowbar, she did not see this. Was she giving proper attention to the decedent? Mrs. Cole also says that the decedent stepped across the guardrail onto the berm just as she "was getting real close to him", and the foreman testifies that decedent had "no more than got his feet to the ground until she struck him." Would any care she might have taken have enabled her to avoid the accident? Could any negligence on her part have been the proximate cause of the injury? We think these questions belong to the jury and not to the court. "Reasonable care is ordinarily a question for the jury." *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745.

Or take the problem of the decedent's contributory negligence. He was facing the approaching car. He could see it as far as Mrs. Cole could have seen him. He stepped across the guardrail, and held or quickly thrust the crowbar a foot or foot and a half above the concrete pavement just as Mrs. Cole arrived at that point. Was this proper care on his part in view of Mrs. Cole's manner of handling her car? Who is to say? We think these matters were peculiarly within the domain of the jury. See *Sewell* v. *Lawson,* 115 W. Va. 527, 177 S. E. 293; *Redmond* v. *Greater Fairmont Bakery,* 114 W. Va. 132, 171 S. E. 109. These conclusions are not wholly without doubt, but the very existence of the doubt removes the case from the court and casts the duty of resolving them upon the jury.

Therefore, the judgment of the circuit court is reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*