W. E. MORTON, *Admr., v.* J. LEWIS BABER

(No. 8459)

Submitted February 10, 1937. Decided March 30, 1937.

458

*Emmet Horan* and *Wolverton & Ayres*, for plaintiff in error.

*A. N. Breckinridge, F. N. Bacon* and *John L. Detch*, for defendant in error.

MAXWELL, JUDGE:

This is an action of W. E. Morton, administrator of the personal estate of P. B. Knight, deceased, against J. Lewis Baber for damages for the alleged wrongful death of plaintiff's decedent, who was killed by defendant's truck. A verdict in favor of the defendant was set aside by the trial court and the plaintiff granted a new trial. To that judgment, the defendant was awarded writ of error.

At the time of the accident, defendant's one and one-half ton truck was being operated by his employee, Walter Watts. The accident occurred between ten and eleven o'clock, the morning of November 9, 1934, in Nicholas County, on state route 94, near Curtin Bridge,

and directly in front of Simeon Spencer's residence. At the place of accident, the highway parallels Cherry River, and for a distance of about nine hundred feet east, in the direction of Richwood, and approximately six hundred feet west, toward Curtin Bridge, the highway is straight. The Spencer home is about one hundred feet from the south side of the road and on an elevation of ten feet above the road level. Deceased resided on the opposite side of Cherry River and was accustomed to cross the river at Spencer's. Some member of the Spencer household usually accommodated the deceased and his wife by taking them across the river in a small boat. They could reach their home from the highway by a more circuitous course—going farther up stream in the direction of Richwood and crossing a railroad bridge.

On the morning of the accident, deceased and his wife had been to a mill near Curtin Bridge and were returning to their home, following their accustomed route. They stopped directly across the road from the Spencer home, placed their bags of merchandise on the berm about six feet from the north edge of the hard surface, and Mrs. Knight crossed the road and went to the Spencer home for the purpose of making inquiry as to the illness of Mrs. Spencer, and further, to solicit assistance in crossing the river. She remained at Spencer's about five minutes, and before leaving, was informed that none of the men of the family were there, and that it would be unsafe for a woman to attempt to put the boat across the river.

While deceased was waiting for his wife to return, Ed Ford, driving a road roller east on the highway, stopped the roller on the south side of the highway immediately across from where deceased was standing. The highway is sixteen feet wide and the roller was eight feet wide, fourteen feet long and six feet high.

Upon his wife's return to where the bags had been placed, deceased crossed the road to the south side, and standing on the ground directly behind the middle of the rear end of the roller, engaged in conversation with Ford. The latter informed the deceased that he (Ford)

would carry the bags of merchandise on the roller to the railroad bridge. Whereupon, deceased turned and started back to the other side of the road where his wife was standing, and after taking two or three steps in that direction, was struck in the head and killed by the left front corner of the bed of defendant's truck, traveling west (toward Curtin Bridge).

On the foregoing matters, there is no dispute.

In charging negligence against the defendant, the plaintiff alleges that the truck was traveling on the south side of the middle of the road; that its speed was excessive, and that the driver failed to sound a warning as the truck approached the roller.

There is some conflict in the evidence with respect to how much of the roller rested on the hard surface; the estimates vary from eighteen inches to half the width of the road. That about three or four feet of the width of the roller rested on the hard surface, seems to be the preponderating testimony on that point. Also, some variance appears respecting the exact position on the road the body of deceased lay after he was struck. But it seems clear that the body was lying about the middle of the hard surface and 15 to 20 feet from the rear of the roller. Further, there is difference in estimate as to the distance the truck traveled beyond the roller before the truck was stopped. A fair conclusion is that Walter Watts, driver, brought the truck to a stop on the north berm of the road about 60 feet from the roller.

Respecting the more sharply controverted matters, the following:

Mrs. Knight testified that the truck was running very fast—"It was fairly bouncing on the road"; that no warning was given; that the truck was running on the south side of the road.

Ed Ford stated that the roller was stopped on the south side of the road; that about three feet of its width rested on the hard surface; that the motor in the roller was running and made considerable noise; that the driver of the truck was unable to see deceased standing in rear

of the roller; that defendant's truck was "making pretty good speed" and came within three or four feet of the roller in passing; that he did not hear any warning sounded by the truck driver; that during the conversation with deceased, he (Ford), facing west, was standing on the roller's platform about two and one-half feet above the ground, and that as deceased started across the highway, he (Ford) turned, looked in the direction of the approaching truck and saw it for the first time, and then by calling, attempted to warn the deceased, but apparently he did not hear it.

Mrs. Ocie Ward and Irene Strader, who were standing in a front door of the Spencer house and saw the accident, testified that the truck was traveling on the north side of the road, and that they heard no warning of its approach. Mrs. Ward stated that the roller was three feet on the hard surface, and that the deceased took about three steps hurriedly toward the north side of the road and did not look to the right or left. Irene Strader also gave evidence that deceased stepped out quickly in front of the truck. They did not testify with respect to the speed of the truck.

Walter Watts asserted that prior to the accident he had been driving about 25 to 30 miles per hour and when he arrived within three or four hundred feet of the roller he sounded the horn and slowed down to 20 miles per hour; that he drove on his right (north) side of the middle of the highway as he passed the roller; that the roller was occupying half the road; that he did not see deceased until after he was struck; that he (Watts) stopped the truck when he felt the impact but did not then know with what he had collided.

In further support of plaintiff's assertion that the truck was traveling at an excessive rate, four other witnesses were called, namely, Noah M. Gay, W. S. Taylor, Mr. and Mrs. Lloyd Spencer.

The last three witnesses testified that they were traveling west in the direction of Simeon Spencer's at the rate of about 35 miles per hour, and at a point about one mile east of the accident, defendant's truck passed them and moved ahead rapidly.

Gay, engaged at the time as a trackman for the B. & O. Railroad Company, whose right-of-way was on the north side of Cherry River, testified that from his position about 100 yards north of the accident, he saw the truck approach within 150 feet of the accident; that the truck was traveling at the rate of 55 or 60 miles per hour; that he had never seen a truck run so fast; that it did not slow down nor did the driver "blow any horn"; that his attention then being distracted by some matter near him, he diverted his gaze and did not see the impact.

On this background, the jury returned a verdict for the defendant.

It was, of course, for the jury to make decision with respect to controversial matters, such as speed of the truck, its position as to the middle of the highway, whether a warning was sounded by the truck driver, the extent to which the roller rested on the hard surface, and the distance the deceased advanced before he was struck. The general verdict must be deemed both inclusive and conclusive of all these matters, if there was no error in trial procedure. Though there is a general assignment of error respecting the admission and exclusion of evidence, no reliance seems to be placed on those points, and we perceive no substantial basis therefor. The whole problem, therefore, centers around plaintiff's instruction Number Nine and defendant's instructions Numbers Two, Four and Five.

In setting aside the verdict of the jury and awarding the plaintiff a new trial the court grounded its action on the fact that it had refused to give to the jury instruction Number Nine requested by the plaintiff. That was a last clear chance instruction. We are of opinion that it was properly refused by the court because there was no appreciable lapse of time between the emergence of plaintiff's decedent from behind the roller and the impact. A case directly in point is *McLeod* v. *Charleston Laundry*, 106 W. Va. 361, 145 S. E. 756. There, the decedent, in a severe storm, with her umbrella cutting off her view in the direction from which the defendant's truck was

approaching, stepped suddenly into a street directly in front of the truck. There was no time for the driver to avoid striking the woman after he saw her peril. Therefore, the doctrine of last clear chance was held inapplicable.

The plaintiff insists that under the holding in the case of *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28, the said instruction Number Nine should have been given, in order that the jury might determine from the facts and circumstances whether the driver of the truck should have anticipated the presence of plaintiff's decedent and his impending peril. There was no evidence tending to establish that the truck driver saw or could have seen the deceased as he stood on the edge of the road behind the roller. In the exercise of the very highest degree of care and caution, the driver could have brought the truck to a full stop or to a very slow rate of progress, and thus have avoided the accident. But the law does not make such severe exaction of drivers of motor vehicles, in the absence of circumstances reasonably indicating the necessity of bringing the vehicle to a stop or reducing its speed to a minimum in order to avoid injury to another. It is not to be anticipated by such operators that pedestrians will step suddenly into the path of approaching vehicles. The situation at bar is essentially different from that which was presented in *Smith* v. *Gould,* herein relied on by the plaintiff, though some similarity arises from the fact that the decedent in that case, without looking in the direction from which the Gould automobile was approaching, started across the road from behind a parked bus from which she had alighted, and was struck and killed by the defendant's automobile. But Gould had seen the woman alight from the bus and start back towards its rear. He knew that there were houses across the highway, in which direction she was much more likely to move than to leave the road on the side where she alighted from the bus, because, on that side, there were an embankment and ditch close along side of the road. Also, when she started across the road, she came into the line of vision of the defendant when he

was forty or fifty feet away from her, and it appeared from the evidence that at the rate at which he was driving, he could have stopped the automobile within that distance. We held that Gould, having been put on guard by the initial facts recited, should have been on the alert, and that after the woman stepped negligently into the path of the approaching automobile, he should have seen and recognized her peril, and have avoided hitting her. In the case at bar there is no evidence from which the deduction can properly be made that the truck driver saw the deceased before the accident. And, in our opinion, the jury would not have been warranted in finding from the evidence that the driver, in the exercise of reasonable care, should have known of the decedent's peril in time to avoid injuring him.

The plaintiff also takes the position that there was prejudicial error in instructions Numbers Two, Four and Five given by the court to the jury at the request of the defendant, and that the trial court's action in setting aside the verdict may very properly be justified because of the error in these three instructions. By instruction Number Two, the jury was told that the plaintiff could not recover if the jury believed from the evidence that there was "contributing negligence or contributing cause, coming from plaintiff's decedent which contributed proximately" to the injury. The plaintiff's first objection to this instruction lies in its disregard of the doctrine of last clear chance. For the reasons above set forth, we are of opinion that that doctrine has no place in the case and that reference to the doctrine was properly omitted from this instruction. There is also further criticism of this instruction because of the phrase "contributing cause". The phrase is not an approved one, and, standing alone, it might readily be prejudicial, but it must not be appraised separately from the context of which it is a part. The sense in which it is used in the instruction is limited and explained by the further phrase "which contributed proximately" to the injury. With the challenged phrase thus limited, we perceive no prejudice in the instruction.

By defendant's instruction Number Four the jury was told that the plaintiff could not recover if the jury believed from the evidence that the plaintiff's intestate "was guilty of any negligence, however slight, which contributed proximately to the happening of the accident" involved in the suit. The criticism is leveled at the words "however slight". It is said that the presence of those words in the instruction rendered it prejudicially erroneous in that they "unnecessarily emphasized in the mind of the jury the question of decedent's want of care and caution". We are impressed that this phrase does not involve prejudice when it is read in conjunction with the immediately attending and limiting phrase "which contributed proximately to the happening of the accident". When negligence of a person has contributed to his own injury (the doctrine of last clear chance being excluded under the facts), he cannot recover damages of another concurrently negligent, and it makes no difference whether the complaining party's negligence was great or small, if it contributed proximately to his injury. A similar instruction was considered by this court in *Roberts* v. *Baltimore & O. Railroad Co.*, 72 W. Va. 370, 375, 78 S. E. 357. There, the jury was told by the designated instruction that the plaintiff could not recover if his negligence in any degree contributed to his injury received by colliding with a railroad train at a public crossing. The instruction was approved.

Defendant's instruction Number Four, at bar, may be contrasted with an instruction which was under consideration in the recent case of *Willhide* v. *Biggs,* 118 W. Va. 160, 188 S. E. 876. We disapproved an instruction, therein brought under appraisal, which told the jury that if they should find from all the evidence that the plaintiff was guilty of any negligence which helped to bring about or produce the injury complained of, they should find for the defendants. The word "helped" has no place in a contributory negligence instruction, and then, too, the instruction contained no such limiting phrase as, for example, "which contributed proximately to the injury complained of". We there stated that to defeat recovery,

the plaintiff's negligence must have been such, that, without it, the injury would not have resulted, subject, of course, to the doctrine of last clear chance. The instruction at bar safeguards the situation by the employment of the limiting phrase quoted and discussed. Considering also the facts at bar, it is evident the injury would not have resulted to the deceased but for his negligence.

The jury was told by defendant's instruction Number Five that if they believed from the evidence the fatal injury of plaintiff's decedent was the proximate result of concurrent negligence of both the said decedent and the agent of the defendant, there could be no recovery. This instruction presents a fundamental postulate of the law of negligence. Excluding from this case, as we must, for the reasons hereinabove set forth, the applicability of the doctrine of last clear chance, this instruction was not erroneous.

These considerations lead us to the conclusion that there was no prejudicial error in the trial, and that the verdict of the jury should be upheld. Therefore, we reverse the judgment of the trial court, reinstate the verdict and enter here a judgment of *nil capiat*.

*Reversed and rendered*