JOHN W. RAY *v.* C. C. CLAWSON, *etc., et al.*

(No. 9141)

Submitted January 21, 1941. Decided February 25, 1941.

*Bernard Sclove* and *Rummel, Blagg & Stone,* for plaintiffs in error.

*Payne, Minor, Ray & Davis, John V. Ray* and *Walter C. Price, Jr.,* for defendant in error.

ROSE, JUDGE:

C. C. Clawson, doing business as Motor Transit Company, and Everett Mash prosecute this writ of error to a judgment of the Circuit Court of Kanawha County against them for $9,100.00 in favor of John W. Ray for alleged injuries to the plaintiff when struck by a truck belonging to the defendant Clawson, and operated by his employee Mash.

The accident occurred between 6:30 and 6:45 and before daylight on the 14th day of December, 1939, on U. S. Route No. 21, leading north from the City of Charleston toward and through the village of Sissonville. The highway at the point of the accident was then lately improved by a concrete pavement twenty feet wide, with a berm at the place of the accident eight to ten feet in width, and was for a long stretch in either direction practically straight.

The plaintiff testified that he was walking on the highway from his home near Sissonville toward Charleston, where he was employed; that he walked on the left-hand side of the road until he reached a fill over Kanawha Two-Mile Creek, (which was about fifteen feet in height) and that about the middle of the fill he crossed over to the right-hand side of the road, and went down to the foot of the fill to relieve a "call of nature"; that when he returned to the top of the fill and the outer edge of the berm, he observed the approach of the defendant's truck some distance away, and then walked "quartering" toward the pavement; that on arriving at the edge of the pavement he stopped about a foot to eighteen inches from the pavement and looked back toward Sissonville and again saw the defendant's truck approaching rapidly at a distance of about sixty feet; that he then turned his face in the opposite direction, that is, toward Charleston and away from the truck, waiting for the truck to pass, and that he knew nothing more until he regained consciousness in a Charleston hospital forty-eight hours later.

The defendant Mash testified that he was the driver of the truck in question, which was a Ford one and a half ton truck; that he was bringing a load of steel weighing between three and a half and four tons from Pittsburgh to the Ordnance Plant at South Charleston; that his truck was equipped with a regulator which prevented its being driven at more than thirty-seven miles per hour; and that he was actually driving at something less than that rate of speed; that he at no time saw the plaintiff; that as he approached the place of accident he met three cars, one of which did not dim its lights; that his truck did not leave

the pavement, and that he ordinarily drives near the center line; that he felt a slight jar as if running over something or striking a rut and that he stopped his truck promptly and went back to ascertain if he had struck any person. By means of a flashlight he found the plaintiff lying on the berm four or five feet away from the pavement, wholly unconscious.

Passers-by, who stopped, testified as to the place where plaintiff was lying when discovered, and that his feet were toward the pavement and his head and body extended diagonally outward; that the morning was clear, although there had been rain before midnight, and the pavement was in some places wet; that the berm was soft and muddy. One witness for the plaintiff says that he did not observe any tracks of the truck on the berm, and no other witness was interrogated on this point.

The plaintiff was badly injured: his left shoulder blade and arm were crushed, and there was a severe fracture of the coccyx. He was detained in the hospital for one month, and at the time of the trial was still unable to perform his usual labor.

The sole question assigned, briefed, and argued was whether the plaintiff, on these undisputed facts, must be held guilty of contributory negligence, as a matter of law. We are, therefore, relieved of the necessity of discussing or stating any evidence in the case except that which relates to the acts of the plaintiff which are alleged to constitute such negligence.

It must be accepted as a fact in the case that the truck did not leave the pavement. The defendant Mash so testifies and no witness disputes him. The berm was soft and of necessity this heavily laden truck would have left easily recognizable tracks. None is testified to, and we can assume that none existed, else such important testimony would have been produced. The plaintiff's lone statement of his own movements must also be accepted as true, since nobody testified otherwise and no witness appears to be in existence who could give testimony to the contrary. The plaintiff states that he walked "quartering" from the outside of the berm, eight or ten feet wide, toward the

pavement in the direction of Charleston. This necessarily placed his back toward the approaching truck; but he saw the truck when he stood on the outer edge of the berm, and then stepped to the edge of the pavement, looked backward, and again saw the truck approaching. He does not pretend to state accurately his distance from the pavement, but says only, "I did not say I was eighteen inches from the edge of the pavement. I said to the best of my knowledge between something like a foot and eighteen inches." The fact remains, however, that he was sufficiently close to be struck by the passing truck, without its leaving the pavement. The evidence also shows that the truck was equipped with dual wheels in the rear, the inner wheel being in line with the front wheel, and that the body of the truck extended four inches beyond the outside rear wheel. The evidence does not show the distance from the inner wheel to the outer edge of the body. It was, therefore, possible for the truck to have run so close to the edge of the pavement that the outer dual wheel and the body would have extended "something like a foot" beyond the edge of the pavement. However, to receive the wounds which were inflicted on him, the plaintiff's body must have extended inward from the outer edge of the truck body several inches, which necessarily places him well within one foot of the edge of the pavement. The question then becomes one of law whether the plaintiff, in so standing in this proximity to the edge of the pavement, after he had distinctly seen the truck approaching at a distance of only sixty feet away, with his back to the truck, was exercising the care which an ordinarily prudent man would have employed in that situation. We are compelled to answer this question in the negative. See *Slater* v. *Shirkey,* 122 W. Va. 271, 8 S. E. (2d) 897; *Yoder* v. *Transit Co.,* 119 W. Va. 61, 192 S. E. 349; *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E. 107.

Assuming, as we must in this case that there was sufficient evidence in the case to justify the jury in finding that the driver of the truck was guilty of negligence in not observing the plaintiff and avoiding him, it still remains true that some duty devolved upon the plaintiff

to look out for himself. The fact that he was struck by the truck without its leaving the pavement demonstrates conclusively that he was in a position where he could be so struck. He had no right to place himself in such a position, and then merely trust to the truck driver to avoid injuring him. It is not correct to say that under such circumstances the plaintiff was legally justified in assuming that the truck driver would not be negligent, and that he need do nothing for his own safety. It is true that the law exacts of the driver of motor vehicles under such circumstances a very high degree of attention and care to protect another from injury, but the law, in exacting such care from the truck driver does not correspondingly decrease the care required of the pedestrian. The plaintiff, by reason of the fact that he was exposing life and limb, owed it to himself to be highly vigilant against even possible carelessness of the driver of the truck. Courts have uniformly announced that one seeing a motor vehicle approaching him rapidly at a short distance cannot turn his back on the impending danger and be held blameless. If he were a workman on a street and required to give his attention to some other matter; if there were cars approaching from the opposite direction against which he was compelled to guard; or if, for any reason, his attention were required elsewhere, the case might be different. But no reason appears from the evidence why he could not have given his attention to the approaching truck and protected himself absolutely by a half a step backward.

The courts are ever respectful toward the judgment of a jury, and where some care is exercised by an injured person, the finding of the jury that such care was sufficient will be conclusive; but where there is a total lack of care by the injured person, the jury will not be permitted to hold him free of negligence. No reason is perceived why one standing just off the edge of the pavement should be held free of the necessity of exercising ordinary care against a perfectly apparent danger. One in such a position may not obstinately rely on his right to be there, or completely ignore all precautions against obvious

risks, whether brought about by the negligence of another or otherwise, and still be without blame.

Nor can the plaintiff here escape on the theory that the driver of the truck had the last clear chance to save him. It is not at all clear that the driver had any such chance after the plaintiff placed himself at the danger point. The driver was only sixty feet distant and approaching at thirty-five miles per hour. A second or two was his full time to appreciate the danger, resolve on his course, and act. *Milby* v. *Diggs, supra; Morton* v. *Baber,* 118 W. Va. 457, 190 S. E. 767; *Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618.

The plaintiff had or could have had an equal opportunity to extricate himself. The chances for avoiding the accident of the plaintiff and the truck driver were equal and concurrent; hence, there was no "last clear chance" and a case for the plaintiff on that principle of law becomes impossible.

In the case of *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 747, 127 S. E. 486, the opinion says: "Assuming that the plaintiff was negligent, it was her duty, with the automobile in plain view coming toward her, to have looked and stopped when such act would have been effective. She had the same last clear chance to protect herself as the defendant had to protect her, for the doctrine of last clear chance is a duty imposed by law on both the plaintiff and defendant. If, being in plain view of each other and with equal opportunity to prevent the accident, they are guilty of concurring negligence, there can be no recovery." We think this rule of law is applicable and controlling in the present case.

The judgment of the trial court will therefore be reversed, the verdict set aside, and a new trial awarded the defendants.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*

LOVINS, JUDGE, dissenting:

I cannot agree with the holding of the majority of the Court that plaintiff was guilty of contributory negligence as a matter of law.

Of course, it is not disputed that the truck was being operated on a straight stretch of new concrete highway twenty feet in width. Resolving a conflict in the evidence, as to other vehicles travelling in the opposite direction, in favor of plaintiff by reason of the verdict in his behalf, the record shows that the entire width of the paved surface was available to the driver of the truck, a fact which was apparent to plaintiff as he crossed the berm "quartering," and approached the edge of the highway. The body of the truck extended beyond the outer dual rear wheel four inches. If the inner rear wheel remained on the hard surface the truck would leave no wheel mark on the berm, although its body overhung four inches plus the distance between the outside of the outer wheel and the center of the inner wheel, that space being dependent upon the width of tires upon a truck carrying between three and a half and four tons of steel.

What degree of care was plaintiff required to exercise in order to avoid being struck in the dark while on the berm, by that part of the truck body which extended beyond the hard surface, and which extension was not marked by any light? Wherein was the plaintiff guilty of contributory negligence as a matter of law, in stopping before he reached the paved surface, eighteen inches, one foot, or, as the majority opinion states, "well within" one foot, thereof? I find difficulty in saying as a matter of law that the plaintiff, without reasonable care for his safety, placed himself in a perilous position thereby. Just at what point on the ten-foot width of berm did the plaintiff become negligent as a matter of law? When he came up over the bank and entered upon the berm, I take the liberty of presuming that the majority would say that he had not established any conduct bordering upon negligence. There was no vehicle travelling on the berm, as a matter of fact, it was soft and muddy and offered no inducement to vehicular travel when compared with the new, straight, twenty-foot highway. I do not believe that this, or any other court can with propriety fix the point where plaintiff as a matter of law, changed from a prudent to a negligent wayfarer. With deference

to the views of the majority, I am firm in the belief that it was the province of the jury to determine whether plaintiff acted as an ordinarily prudent man would have acted under the same circumstances.

Plaintiff had the right to assume that the driver of the approaching vehicle would exercise reasonable care. "In this jurisdiction a person using a public road has a right to assume that those likewise using the road will use due care." *Fielder* v. *Service Cab Co.,* 122 W. Va. 522, 11 S. E. (2d) 115. To the same effect see *Sewell* v. *Lawson,* 115 W. Va. 527, 177 S. E. 293; *Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601, 50 A. L. R. 1505; *Deputy* v. *Kimmell,* 73 W. Va. 595, 80 S. E. 919, 51 L. R. A. (N. S.) 989, Ann. Cas. 1916 E, 656. "Whether the care used by one charged with contributory negligence was that which an ordinarily prudent person would use in the same place and under the same circumstances is generally for the jury." *Sewell* v. *Lawson, supra.*

The cases of *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E. 107, and *Slater* v. *Shirkey,* 122 W. Va. 271, 8 S. E. (2d) 897, cited in the majority opinion, are, in my mind, distinguishable upon the facts from the case at bar, in that in each, the pedestrian walked into the travelled portion of the street or highway with utter lack of caution. In the case of *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486, referred to by the majority opinion as "controlling," the pedestrian had continued walking across the street after glancing up and seeing an approaching automobile; the opinion in that case, however, seems to support my views herein, by holding that a question of fact for the jury was presented as to whether the pedestrian used the care of an ordinarily prudent person under the same circumstances. In the case of *Yoder* v. *Charleston Transit Co.,* 119 W. Va. 61, 192 S. E. 349, also relied upon by the majority opinion, plaintiff walked into the street after having looked in both directions without appreciating her danger, and the court held that she was presumed to have seen what was in plain view and should have been seen. Here, the plaintiff saw the vehicle approaching and stopped to let it pass. I am of the opinion that the

jury was entitled, under the cases cited in this note of dissent, to determine whether the plaintiff acted with reasonable prudence.

For the reasons assigned herein, I respectfully dissent from the opinion of the majority of the court.

I am authorized to state that Judge Kenna joins me in this dissent.