ELIZABETH LYNCH, *Admx., etc.* v. HARRY C. ALDERTON

(No. 9303)

Submitted May 12, 1942. Decided June 2, 1942.

S. *Woods Byrer* and *Harry H. Byrer*, for plaintiff in error.

*Lacy I. Rice* and *Herbert E. Hannis*, for defendant in error.

**448**

Fox, President:

Harry C. Alderton prosecutes this writ of error to a judgment of the Circuit Court of Morgan County, entered against him and in favor of Elizabeth Lynch, administratrix of the estate of Austin Lynch, deceased, on the third day of September, 1941. The action was one for wrongful death of plaintiff's decedent through the alleged negligence of the defendant.

There is little dispute as to the material facts. Alderton was the owner of a truck which he was operating, in this instance, in returning from Philadelphia to his home in Morgan County. He was accompanied by a young boy about sixteen years of age. He reached the point of accident, which was on a paved highway, about seven-thirty in the evening. It had been snowing and the ground was covered with two or three inches of snow, which, on account of rain, had developed into slush. The night was dark, misty, and one witness says that part rain and part snow was falling. Plaintiff's decedent was the owner of an automobile which, at the time of the accident, was located on the paved portion of the highway, on the right-hand side thereof, and facing west. Decedent lived some distance from a filling station and had run out of gasoline. He procured a small amount of gasoline, and through using it in the carburetor, attempted to drive his automobile from his home to the filling station. He was accompanied by his son, and by using gasoline and pushing the automobile had reached a point about a quarter of a mile from the filling station. At that point they gave up their effort to drive the automobile further, and the son took a lantern and started traveling in the direction of the filling station, plaintiff's decedent remaining in the front seat of the automobile. This automobile was on the paved portion of the highway, the left wheels being within about eighteen inches of the center line thereof. There is a dispute as to whether lights were burning on the automobile at the time of the accident, but there is ample evidence to support the theory that the lights were burning, although dimly. The decedent was a small man, and it is contended

that his presence in the automobile could not be observed by anyone approaching from the rear. There was a solid berm on the right-hand side of the paved portion of the highway of sufficient width to have permitted the parking of the automobile thereon. The defendant, coming up from the rear of this automobile, ran into the same, badly damaging it, and causing injury to the plaintiff's decedent from which he died the next day. Defendant contends, and in this he is supported by the boy who accompanied him, that the decedent's automobile was not lighted, and was not seen by him until he was within about fifteen feet of its location; that he made an effort to turn to the left and avoid running into the automobile, but was unable to do so, and contact between the two vehicles resulted. Of two witnesses who were driving along this road, and coming from the direction in which the automobile and truck were facing, one says that he observed decedent's automobile when within about sixty feet of where it was parked, and when within about thirty feet, observed dim lights thereon; and the other states that he did not see the lights of the automobile until he was within twenty-five or thirty feet. These statements, to some extent, corroborate the claim of the defendant that the decedent's automobile could not be seen for a long distance, although it is clear from the testimony that the highway was straight for some fourteen hundred feet, and that the lights required to be carried on a truck of the kind owned by the defendant should, under normal conditions, carry for some five hundred feet. The evidence is that defendant did not see the decedent until after the accident.

On this state of the facts, the court, by its instructions, presented to the jury three questions for its determination: (1) The primary negligence of the defendant; (2) the contributory negligence of the plaintiff's decedent; and (3) the question of whether the defendant had the last clear chance to avoid the accident even if plaintiff's decedent was guilty of contributory negligence. The correctness of these rulings will be hereafter discussed:

A preliminary question requires consideration at this

point. The jury was examined on its *voir dire*, and after the usual questions were asked by the court, counsel for plaintiff requested the court to propound the following question: "Are any of you officers, employees, agents or stockholders in any liability insurance company?" Objection was made to the asking of this question, and the same was overruled, and, according to our interpretation of the record, the question was actually propounded to the jury. Then followed proceedings out of the presence of the jury in which counsel for the defendant excepted to the asking of this question, to which the court responded that "If you object to the fact that the question was put to the jury as a whole, and not to the individual jurymen, I will ask the individual jurors if you so desire." But counsel objected to the question being asked of individual jurors "or in the way it has already been asked." Subsequent to this, other questions were asked by the court, at the instance of both the plaintiff and the defendant, but the question quoted above was not again asked. We conclude, therefore, that the question quoted was asked of the entire panel prior to the proceedings had out of the presence of the jury.

A long line of decisions of this Court hold that, in the trial of an action for personal injury or death, it is prejudicial error to admit evidence that insurance indemnity is carried by the defendant. It was so held in *Walters* v. *Appalachian Electric Power Co.,* 75 W. Va. 676, 84 S. E. 617. The same principle has been adhered to in the following cases: *Christie* v. *Mitchell,* 93 W. Va. 200, 116 S. E. 715; *Moorefield* v. *Lewis,* 96 W. Va. 112, 123 S. E. 564; *Adams* v. *Cline Ice Cream Co.,* 101 W..Va. 35, 131 S. E. 867; *Wilkins* v. *Swartz,* 101 W. Va. 337, 132 S. E. 887; *Fleming* v. *Hartrick,* 105 W. Va. 135, 141 S. E. 628; *Jones* v. *Smithson,* 119 W. Va. 389, 193 S. E. 802.

Counsel for plaintiff do not controvert this rule, but they say the bare asking of the question which was propounded in this case, not going so far as to state to the jury that there was liability insurance, was not error, and they rely chiefly on *Adams* v. *Cline Ice Cream Co., supra,* in which Judge Hatcher, speaking for this Court, said:

> "There is no intention on the part of courts to hamper counsel in the proper interrogation of jurors. Counsel are conceded the right to explain to the trial court, in the absence of the jury, the reason prompting a desire to interrogate the jurors along a specific line. If permission be granted, the bare question should be asked, unaccompanied by comment or suggestion."

And then cites *Girard* v. *Grosvenordale*, 82 Conn. 271, 73 A. 747, 748. In that case, it was held that:

> "Where plaintiff's counsel, in the absence of the jurors, and in the presence of counsel for defendant, informed the court that defendant was insured against liability for damage to the plaintiff, and that the insurance company was conducting the defense, it was not an improper exercise of discretion to permit plaintiff in good faith to inquire of the jurors whether any of them were stockholders, officers, agents, or employees of the insurance company, as affecting their qualification."

Valuable notes on this question appearing in 56 A. L. R. 1454, and 74 A. L. R. 860, indicate that the general trend of authority is that, in a proper case, inquiry of jurors should be permitted along this line, in order to avoid possible prejudice by reason of the interest of some juror as a stockholder, or otherwise, in the insurance company, interested in the result of the action. We are in entire accord with the expressions of Judge Hatcher, quoted above, and the general trend of the authorities, but we do not give to the expressions quoted the broad meaning which counsel for plaintiff, and the trial court, seem to have accorded to them. The question under attack was not asked after confiding to the court any situation which might justify it; the suggestion that it be asked was made in the presence of the jury, and, as the record shows, was propounded by the court in advance of any discussion or showing that might, in other circumstances, have warranted some proper inquiry along that line. It may be easily conceived that a situation might arise wherein the

court would be warranted in asking the question of one or more jurors, without making the inquiry of the entire panel, but that, from the record before us, was not this situation. If the question under consideration was proper in this case, then a like question could be propounded in every case involving litigation wherein damages are involved, and of a class where the defendant might possibly be indemnified against such damage by a liability insurance company, or otherwise. The mere asking of such a question would necessarily create in the minds of the jury the distinct impression that the defendant was protected by insurance, and would, in many cases, serve to prejudice the interests of defendants who were not so protected. The broad principle upon which the rule that juries should not be advised of insurance, is that litigants are entitled to have their cases tried without the injection of a matter that should have no proper influence upon a verdict. Whether correctly or not, this Court is on record as believing that a showing that a defendant is protected by insurance serves to influence a jury to the prejudice of the defendant, not only as to whether a verdict should be found for a plaintiff, but the amount thereof as well. Former holdings of this Court impel the conclusion that we cannot approve this question, under the circumstances in which it was asked, without overruling and nullifying such holdings, and this, we are unwilling to do. It is idle to say that the asking of the question under consideration in this case did not tend to advise the jury that the defendant carried liability insurance. We think the trial court erred in propounding this question, as well as the subsequent question as to whether any member of the jury was surety for the defendant on any bond. Such an inquiry might have been proper, as applied to an individual juror, out of the presence of the balance of the panel, had the matter been brought to the attention of the trial court, and reasonable grounds therefor shown.

As stated above, the court submitted to the jury the question of defendant's negligence, and the alleged contributory negligence of plaintiff's decedent. We think the

evidence justified this course. We are of the opinion that the condition of the road and of the atmosphere, and the fact that the automobile in which the decedent was sitting may or may not have been lighted, warranted the court in submitting to the jury the question of whether or not, in the circumstances, the defendant was negligent. The temporary parking of a lighted motor vehicle on the paved portion of the highway in the night time, for purposes connected with travel, is not, alone, negligence *per se,* as a matter of law. *Miller* v. *Douglas,* 121 W. Va. 638, 5 S. E. 2d 799. There is evidence here from which the jury could reasonably find that there was no contributory negligence, while, on the other hand, if the defendant is to be believed, and the automobile was not lighted, and left on the traveled portion of the highway, the jury could have found that plaintiff's decedent was guilty of contributory negligence, and, therefore, the question whether there was such negligence was properly submitted to the jury. But the court went further, and instructed the jury, by instructions seven and ten, that even if it believed that plaintiff's decedent was guilty of contributory negligence, still, in some circumstances, the defendant could be held liable, presumably under the doctrine of the last clear chance. It is clear that the jury must have found that the defendant was guilty of primary negligence; otherwise no verdict against him would have been warranted. But can we say that the jury found that the plaintiff's decedent was not guilty of contributory negligence? The jury may have believed that the plaintiff's decedent was guilty of contributory negligence, but under the doctrine of the last clear chance, his administratrix was nevertheless entitled to damages resulting from his death. Therefore, two questions arise: (1) Does the doctrine of last clear chance apply in this case? and (2) if it does apply, were the instructions under which the question was submitted to the jury proper under the holdings of this Court?

Mature consideration of the first question has brought us to the conclusion that this is not a case where the doctrine of last clear chance applies. The defendant says

that he did not see the automobile in which the plaintiff's decedent was sitting until he was within some fifteen feet of where it was located. Persons coming from the opposite direction did not see it until they were within from twenty-five to sixty feet. The fact that, under normal conditions, decedent's automobile could have been seen for a much greater distance, does not necessarily control. The evidence, as a whole, we think, discloses that decedent's automobile could not have been seen for any great distance. In *Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618, this Court held: "The doctrine of the last clear chance implies a sufficient interval of time for both appreciation of the dangerous situation and effective effort to relieve it." This holding was approved and reiterated in *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E. 107. See also, *Morton* v. *Baber,* 118 W. Va. 457, 190 S. E. 767. In the very nature of things, this must be true. Conditions under which there may be recovery under this theory are where, notwithstanding the negligence of the defendant, his liability therefor has ended because of concurrent or contributory negligence on the part of the injured party, and where the defendant does something, or fails to do something, thereafter which creates a new ground for recovery, namely, the failure to guard against injuring a negligent plaintiff, where it is in his power to do so. As a matter of plain, common reason, we know that this requires knowledge, on the part of the defendant, of the peril of the negligent plaintiff, or circumstances in which he should be held to have had knowledge that peril actually existed, where he then fails to take steps that the dictates of humanity require to be taken to avoid injury. That requires appreciation of the danger without which no effective effort could possibly be made to guard against it. We think this case should have been tried upon the question of defendant's primary negligence, and whether or not there was contributory negligence on the part of plaintiff's decedent.

But even if we should hold that the doctrine of the last clear chance should have been applied, we are of the opinion that the jury was not properly instructed on this

point. The doctrine of the last clear chance has been carefully considered by this Court. In *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28, we held that:

"The last clear chance doctrine is properly extended to a case where an automobilist, by reason of failure by him in his plain duty to maintain a lookout for the persons and property of others on the highway, commensurate with the danger indicated by attendant facts and surrounding circumstances known to him, and which are such as to have put him on the alert, causes injury to another (though such other was himself concurrently negligent), where the peril should have been seen and comprehended by the automobilist and the injury avoided in the exercise of reasonable care commensurate with the situation. Such case constitutes an exception to the general rule which precludes recovery by a plaintiff whose negligence has concurred with the defendant's."

In the opinion in that case, the reason for the rule was thoroughly discussed, and need not be repeated. See also, *Emory* v. *Monongahela West Penn Public Service Co.,* 111 W. Va. 699, 163 S. E. 620. These opinions developed considerable discussion of the rule which should be applied in a case where a defendant had the last clear chance to avoid injury to a negligent plaintiff. The doctrine applied in *Smith* v. *Gould, supra,* was amplified in *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558, 567, wherein we held that syllabus one of the *Smith-Gould* case should be taken to mean that:

"* * * negligent plaintiff, oblivious of impending danger, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury."

This new application of the rule was upheld in *Fielder* v. *Service Cab Co.,* 122 W. Va. 522, 11 S. E. 2d 115. As this Court has determined the law to be, there can be recovery

by a negligent plaintiff only in cases where the defendant knew of the plaintiff's situation of peril and likewise knew that the plaintiff was oblivious of his danger, or could not escape therefrom, and when, in the circumstances, in the exercise of reasonable care, he should have realized the plaintiff's peril, and on such realization, could have avoided the injury; or where a negligent plaintiff, in a position of peril, can escape therefrom, but the defendant actually saw the plaintiff's peril in time to avert his injury and failed to take steps necessary to do so. This being true, we are led to inquire whether instructions given by the trial court on the matter of the last clear chance properly stated the rule. Instruction, No. 7 reads:

> "The Court instructs the jury that even if you should believe from the evidence that Austin Lynch was guilty of negligence in sitting in his automobile which was standing on the traveled surface of the highway, yet if you further believe from the evidence that his negligence was not the proximate cause of the injury but that the defendant, Harry C. Alderton, by exercising such care and caution as an ordinarily prudent and reasonable person would have exercised under the same circumstances, conditions and surroundings, in the operation of his truck, could have avoided crashing into the automobile of the said Austin Lynch and killing him, and that the said Harry C. Alderton did not use such degree of care and caution in the operation of his truck, and as the proximate result thereof the said Austin Lynch was killed, then you should find for the plaintiff and assess her damages in such an amount as you think proper not to exceed $10,000.00."

It is apparent that this instruction ignores the question of the defendant's knowledge of the peril of plaintiff's decedent, or his inability to extricate himself therefrom. As we interpret the instruction, it is one which would authorize the jury to find for the plaintiff in a case of concurrent negligence. Of course, there can be no recovery in a case of contributory or concurrent negligence. *Waller*

v. *Railroad Co.,* 108 W. Va. 576, 152 S. E. 13; *Keller* v. *Railroad Co.,* 109 W. Va. 522, 156 S. E. 50; *Milby* v. *Diggs, supra; Morton* v. *Baber, supra; Ray* v. *Clawson,* 123 W. Va. 99, 14 S. E. 2d 259.

Plaintiff's instruction No. 10 comes nearer the correct rule. It reads:

> "The Court instructs the jury that even though you may believe from the evidence that the said Austin Lynch was guilty of negligence, yet if you further believe from the evidence that the defendant, Harry C. Alderton, knew of the said Austin Lynch's danger, or by the exercise of ordinary care should have known of his danger, in time to have stopped his truck or to have turned to his left and thus miss the automobile in which the said Austin Lynch was seated, it was his duty to exercise such care, and if you believe from the evidence that the said Harry C. Alderton failed to exercise such care and as a proximate result thereof the said Austin Lynch was killed, the defendant is liable therefor and your verdict should be for the plaintiff."

But this instruction leaves out any reference to the necessary element that the plaintiff was in peril or unable to extricate himself therefrom, or was oblivious to his danger, and that such situation of peril was known, or should have been known, by the defendant.

What this Court conceives to be the true rule with respect to the application of the doctrine of the last clear chance has not been reached without prolonged discussion and spirited debate. The majority rule throughout the country is in accord with the rule as announced by this Court in *Meyn* v. *Dulaney-Miller Auto Co., supra.* For a discussion of this and other cases bearing on the subject, see 119 A. L. R. 1041, 1076. In *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711, 712, it was held that "Last clear chance rule is inapplicable where negligence of person injured continued to time of injury, unless defendant should have been aware that plaintiff was unconscious of peril." In *Meyn v. Dulaney-Miller Auto Co., supra,* we held:

> "In the absence of actual knowledge by defendant of plaintiff's position of peril, a negligent plaintiff in a position of peril from which he can escape cannot recover under the last clear chance doctrine unless oblivious of his impending danger, and the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury."

We hold, therefore, that neither of the instructions given on the last clear chance doctrine stated the correct rule, and if the doctrine were applicable, the giving thereof would compel us to reverse the judgment on that ground alone.

It follows that the judgment of the Circuit Court of Morgan County is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*