NONA UTT, *Admrx., etc. v.* JOHN HEROLD, JR., *et al.*

(No. 9671)

Submitted April 24, 1945. Decided June 5, 1945.

A. N. *Breckinridge,* Peter *Barrow,* Jr., and Larry M. *Andrews,* for plaintiffs in error.

*Wendell* W. *Hoover* and G. C. *Belknap,* for defendant in error.

LOVINS, PRESIDENT:

This action was commenced in the Circuit Court of Webster County by Nona Utt, Administratrix of the Estate of Burl Utt, deceased, against John Herold, Jr., and Harry Tucker, to recover damages for the death of her decedent caused by the alleged wrongful acts of defendants. The jury, after hearing the evidence and instructions of the court, returned a verdict for plaintiff in the amount of eight thousand dollars. The trial court overruled motions in arrest of judgment, to set aside the verdict and grant defendants a new trial, and rendered judgment on the verdict. This writ of error was granted to review that judgment.

On the night of the fatal accident defendants entered an automobile parked in the Town of Webster Springs belonging to Herold, and, after listening for a short time to the radio in the automobile, mutually agreed to travel to the top of a mountain near the town. Tucker, being in the driver's seat, drove the automobile, and Herold sat by his side. They travelled a short distance on State Route 20 to the point where plaintiff's decedent was struck and killed almost instantly.

Plaintiff's decedent was thirty-six years old and lived

on State Route 20. He was on his way home from the Town of Webster Springs, in company with his daughter and another young woman. In going home he and the two women, just prior to the accident, travelled along State Route 20 on the left side of the road, meeting vehicular traffic going in the opposite direction. The paved portion of the road was approximately fifteen feet in width at the point of the accident, with a berm on the left side.

Evidence in behalf of the plaintiff tended to show that decedent was standing on the berm of the road, about two feet from the left side of the paved portion of the road, and that the automobile swerved from the right to the left side of the road and struck the decedent, who was standing still, conversing with the young woman who had accompanied him and his daughter from town. His daughter, having gone a short distance beyond the place of accident, did not see the automobile strike her father, nor did the woman with whom decedent was conversing see the vehicle strike decedent as she was looking in the opposite direction at the moment of impact.

The body of the decedent was carried about twenty-eight feet along the road and came to rest about seven feet four inches from the left side of the pavement, partly on the berm and partly on a bank. The bowl and stem of a pipe similar to one owned by decedent were found on the left berm of the road and particles of glass, presumably from a spotlight on the automobile, were strewn along the road for a distance of about ten feet. Some broken glass was on the left side of the pavement, but the greater portion was on the left berm.

Defendants did not stop the automobile immediately after the accident, but drove on in the direction they were travelling to a point where they turned the automobile and came back to the place of the accident. Defendants testified that they returned in three or four minutes. Other witnesses testified that defendants did not return until approximately fifteen minutes after the accident.

Defendants admitted that the automobile in which

they were riding struck decedent. They testified that decedent and the two women were walking along the left side of the pavement abreast of each other; that the decedent was nearest the center line, and about one foot to the left thereof. Defendant Tucker testified that just before being struck, decedent moved to the right in the pathway of the automobile, and that the accident was unavoidable.

No evidence was offered of the earning capacity or life expectancy of decedent.

Plaintiff introduced in evidence over defendant's general objection an indictment, returned by a grand jury of Webster County, which charged the defendant Tucker with unlawfully and feloniously killing decedent, and an order of the circuit court showing that Tucker, on a plea of guilty to the indictment, was placed on probation for five years. No motion was made to limit the evidence of the indictment and order to defendant Tucker.

The trial court, over objections of defendants, gave plaintiff's instruction No. 1; modified, over defendants' objection, defendants' instruction No. 2; and refused to give defendants' instructions Nos. 4, 5, and 6.

Defendants filed their joint affidavit and affidavits of four other persons in support of their motions in arrest of judgment, to set aside the verdict and grant them a new trial. The joint affidavit of defendants states, in a general way, that defendants were informed that during the trial of the case the jury was given information to the effect that Herold carried public liability insurance on his automobile and that such information influenced the jury. Defendants also state in their affidavit that friends and relatives of some of the jurors had been killed by automobiles, and especially that two of the jurors had suffered loss of relatives by automobile accidents. Affidavits of the other affiants disclosed that four jurors, a short time after the verdict was returned, told the affiants that the jury considered or assumed that Herold was protected by public liability insurance, and that they had determined the amount of the verdict because of such

protection. According to one affidavit a juror stated to affiant that "* * * the jury talked it over and would have made it $10,000.00, but the insurance company could have carried the case up or appealed it, and that by making it $8,000.00 they couldn't appeal." No evidence was adduced which tended to show that Herold was protected by public liability insurance. The examination of the jury panel on its *voir dire* is not made a part of the record. It is likewise not shown by the record that the jury returned a finding for plaintiff for damages without specifying the amount thereof, and that the court sent the jury back to its room to fix the amount of such damages.

The numerous assignments of error made by defendants for purposes of discussion are grouped as follows:

(1) That the verdict is contrary to the preponderance of the evidence; that improper evidence was admitted, and especially it was improper to admit evidence showing the plea of guilty by Tucker to the charge of unlawfully and feloniously killing the decedent; and that the admission in such plea was admissible only as to Tucker and did not affect Herold's liability, and should have been so limited; that proper evidence was rejected; that there was no proof of pecuniary damages; and that there was a variance between the allegations of the declaration and the proof in support thereof.

(2) That the trial court erred in giving plaintiff's instruction No. 1 and modifying defendants' instruction No. 2, and in refusing to give defendants' instructions Nos. 4, 5, and 6.

(3) That it was error to overrule the motion to set aside the verdict and grant defendants a new trial when it was shown by the affidavits, hereinabove mentioned, that the jury assumed that Herold was protected by public liability insurance; that the jury considered matters of law not embodied in any instruction; that the jury had been improperly influenced; and that two of the jurors were prejudiced because of the fact they had suffered the loss of relatives because of automobile accidents;

(4) That the verdict was improper for the reason that

the jury having first returned a verdict for plaintiff and against defendants without specifying the amount of damages, were instructed by the trial court that a specific amount of damages should be found, and that the jury then returned to its room and fixed the amount of damages at eight thousand dollars, which, in fact, was tantamount to the return of two verdicts.

The evidence adduced by the plaintiff is sufficient to sustain the verdict, and does not clearly preponderate in favor of defendants. We find no merit in the first assignment of error.

Defendants made a general objection to the introduction of the indictment and the order of the court, and did not move the court to limit the application of the evidence to Tucker. Distinctions have been drawn as to pleas and findings in criminal trials as constituting an admission by the party tendering such plea. A plea of *nolo contendere* is inadmissible in a civil trial as a declaration against interest, as such plea is not an admission in a true sense. *Schad* v. *McNinch,* 103 W. Va. 44, 136 S. E. 865. An order showing conviction in a criminal trial is ordinarily inadmissible in evidence in a civil trial for the reason that a defendant convicted by a jury has not admitted guilt. *Dry Goods Stores* v. *Williamson,* 91 W. Va. 156, 112 S. E. 301. But a plea of guilty constitutes an admission and may be introduced as rebuttable evidence in a civil trial. *Dry Goods Stores* v. *Williamson, supra.* Tucker entered a plea of guilty, and the order showing such plea was admissible as to him. But we cannot say that it was admissible as to Herold. Herold and Tucker, at the time the plea of guilty was made, did not sustain the relation of principal and agent, nor was the plea of guilty a part of the *res gestae.* As stated above, the objection is general. Was it the duty of defendants' counsel to point out the grounds of objection, and move the court at the time the evidence was offered to limit its effect to Tucker? This Court has held that: "When objection is made in the trial court, the precise point relied upon should be stated so that the trial court may rule understandingly, and the opposing coun-

sel may obviate the objection if possible. When an objection is required to preserve a question for appellate review, the point presented to the trial court thereon should be incorporated in the record. Except in cases where the reasons for these rules do not apply, a mere general objection does not merit review." *State v. John,* 103 W. Va. 148, 136 S. E. 842. As pointed out above, the indictment and plea were admissible as to Tucker. The evidence being admissible for one purpose, it was not error for the trial court to overrule a general objection thereto. *Stansbury v. Stansbury's Admrs.,* 20 W. Va. 23; *State v. Hood,* 63 W. Va. 182, 59 S. E. 971; *Cobb v. Dunlevie,* 63 W. Va. 398, 60 S. E. 384; *Depue v. Steber,* 89 W. Va. 78, 108 S. E. 590.

Defendants contend that the trial court, after having admitted in evidence the indictment and order showing Tucker's plea thereto, erred in refusing to allow Tucker to testify as to all the circumstances leading to his plea of guilty. In defendants' brief it is asserted that the prosecuting attorney advised Tucker to plead guilty and promised him a recommendation for probation, thus inducing Tucker so to plead. From the record it appears that Tucker was asked in the presence of the jury if "the prosecuting attorney was willing to receive a confession on the condition that the court would consider the matter of putting you on parole." Before the court could rule on the objection thereto, the witness answered in the affirmative, and the court, after observing that the witness had answered the question and without ruling upon the objection, stated that the court was not aware of the manner in which the matter of probation was handled before its presentation to the court, and that the question of probation was one on which the court could act as it saw fit under the law. Tucker was then asked if he was observing the conditions of his parole, and he answered that he was. Plaintiff's counsel objected, and the court indicated that the question might be improper. No further questions concerning the matter were propounded. From the foregoing it is apparent that the jury had answered in its presence at least one of the questions concerning the circumstances of Tucker's plea of guilty, and the jury was not instructed

to disregard the question and answer. If defendants now would predicate error on the refusal of the court to allow further questioning along the lines indicated, such questions should have been propounded and, if an objection thereto was sustained, should have made an avowal in the record of the testimony sought to be introduced. *State v. Bowles*, 117 W. Va. 217, 185 S. E. 205. Whether defendants were not allowed to show all the circumstances surrounding Tucker's plea of guilty, we cannot say, as the record is silent on that phase.

Defendants assign as error that there is no proof of pecuniary damages, and that the verdict should be set aside for that reason. The death of decedent is established; his age is shown as thirty-six years; and it is further shown that he left surviving a widow and two daughters. No evidence was introduced to show decedent's earning capacity. It is reasonable to assume that the widow and two daughters of decedent would actually and necessarily suffer loss from his death. *Wigal* v. *City of Parkersburg*, 74 W. Va. 25, 81 S. E. 554. In the case of *Kelley* v. *Railroad Co.*, 58 W. Va. 216, 52 S. E. 520, it was held that the jury "may consider the sorrow, the mental distress and bereavement" of a relative. The statute authorizing an action for wrongful death contains the following language: "* * * In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, * * *." Code, 55-7-6. Aside from the question of evidence, this Court in considering the portion of the statute above quoted, recently held that "a verdict will not be set aside unless it appears 'that the jury was actuated by passion, prejudice, or corruption'." *Legg* v. *Jones*, 126 W. Va. 757, 30 S. E. 2d 76. "No specific rules exist for measuring damages caused by the destruction of human life, except that recovery may not exceed ten thousand dollars, which is the only limitation found in the statute on the power of the jury." *Legg* v. *Jones, supra*. The death of the decedent at the age of thirty-six years, leaving a widow and two daughters suffices to establish the necessary element of damage resulting from decedent's death.

Defendants argue that there is a variance between the declaration and the evidence shown by the physical facts. The declaration is in three counts: In the first it is alleged that Tucker was the agent of Herold; in the second that defendants entered into a joint enterprise; and in the third that Tucker alone was guilty of negligence. In all of the counts the specific act of negligence alleged is, in substance, that the automobile was driven from the right side of the pavement to and on the left berm, where it struck and killed decedent. It is contended that the fact that glass was strewn along the left side of the pavement is an undisputed physical fact, the location of which being established creates a variance between the allegations of negligence and clearly shows that the automobile was not driven off the pavement. The particles of glass were partially on the left berm and left side of the pavement, were located between the point where decedent was struck and the point at which his body came to rest, and were several feet distant from the point where decedent was standing when he was struck. It is entirely possible that the automobile was driven off the pavement and on the berm of the road at the point where decedent was standing, and thereafter was driven back on the pavement. The location of the glass is primarily based on the oral testimony of a member of the Department of Public Safety, who investigated the accident. Aside from the claimed physical fact, the widow of decedent testified that the automobile swerved from the right side of the road to the left side thereof. Another witness testified that the instant before the accident decedent was standing on the left berm of the road about two feet from the pavement. The location of the broken glass is consistent with the allegation that the automobile was driven from the pavement at the point where decedent was struck. The location of the glass was evidence for the consideration of the jury and does not create a variance between the allegations and the proof.

We now come to the discussion of the assignments of error relative to instructions. Plaintiff's instruction No. 1, in substance, told the jury that if they believed that

the automobile was operated by defendant Tucker with the permission of defendant Herold, the owner thereof, and that Herold was riding in the car, that the defendants would be jointly liable for damages done by the motor vehicle on account of the careless and negligent operation by defendant Tucker, and further that if the jury believed from a preponderance of the evidence that defendant Tucker negligently drove the automobile from the right side to the left side of the road, killing decedent, and that decedent was on the proper side of the road and without fault, that the jury should find for the plaintiff and assess her damages in such sum as the jury believed to be just, not exceeding ten thousand dollars. There were two specific objections to this instruction: (1) That there was no proof of the precise items of damages, that no malice, wantonness or wilfulness was alleged in the declaration, and that the jury could not find pecuniary damages; and (2) that the jury had no legal measure of damages to guide them in fixing the amount thereof, and that no recovery could be had for sorrow or mental anguish, but that any damages must be confined to the actual pecuniary loss. As hereinabove indicated, the evidence of plaintiff was sufficient to show damages. The specific objections to the instruction were not well taken, and no other objection being assigned, there was no error in giving the same.

The modification of defendants' instruction No. 2 is assigned as error. The instruction as given by the court is in the record, but in what particular the instruction was modified is not shown. For that reason we do not consider the assignment based on the action of the court in modifying that instruction. Error is assigned to the court's refusal to give defendants' instruction No. 4. The theory on which instruction No. 4 was offered was that decedent was killed in an unavoidable accident. The only testimony supporting that theory was the conclusion of defendant Tucker that he could not avoid striking decedent. The conclusion of one of the defendants is not evidence in a true sense, as the conclusion was for the jury and hence the refusal to give defendants' instruction No. 4 was not

error. Defendants complain of the refusal of the court to give their instruction No. 5. The record discloses that the court refused to give defendants' instruction No. 5, but does not show that defendants took exception to such refusal. Defendants' instruction No. 6 was not given by the trial court. This assignment of error calls for no extended discussion, and, without attempting to analyze defendants' instruction No. 6, it suffices to say that it contains a misstatement of the law relative to application of the law of contributory negligence in actions for wrongful death and was properly refused.

The conduct and qualification of the jurors are the bases of the next assignments. It is shown by affidavits tendered after the verdict that the jurors in their deliberations supposed or assumed that Herold was protected by public liability insurance. Evidence that Herold had public liability insurance covering the automobile in the accident was inadmissible. It has been held a number of times by this Court that in a trial for injury or death of a person, it is reversible error to admit evidence of insurance indemnity carried by defendant. *Lynch* v. *Alderton*, 124 W. Va. 446, 20 S. E. 2d 657. The relevant statement in the opinion in the *Lynch* case is based on a number of decisions of this Court, and the principle is so well imbedded in the jurisprudence of this State that further citation of authority is unnecessary. Here we find no evidence which showed that Herold was protected by public liability insurance, and we find nothing else in the record, except the affidavits, showing or tending to show that the jury had knowledge of such insurance. All affidavits, except that of defendants, are based solely on discussions between affiants and individual jurors. Affiants had no knowledge of the facts stated in the affidavits except such as was imparted by the jurors. This is an effort to impeach the verdict of a jury by words coming from the jurors themselves. Affidavits of jurors are inadmissible to impeach their own verdict. *Pickens* v. *Boom Co.*, 58 W. Va. 11, 50 S. E. 872; *Miller* v. *Transportation Co.*, 123 W. Va. 428, 437, 15 S. E. 2d 400. The affidavits here tendered in support of the motion to set aside the verdict are hear-

say, and constitute an effort to indirectly use assertions made by jurors to impeach their verdict. This effort is subject to the same condemnation as if it were done by affidavits of the jurors. The affidavits were inadmissible to impeach the verdict.

The statement by one juror to the effect that the insurance company could not attack the verdict if it were in the sum of eight thousand dollars instead of ten thousand is likewise an indirect attempt to impeach the verdict by words coming from a member of the jury and is inadmissible. *Pickens* v. *Boom Company, supra.*

There is no showing that the jury was subjected to any improper influence other than the affidavits above mentioned.

It is asserted that some of the jurors had lost close relatives by automobile accidents. We fail to see any connection between that fact, if it existed, and the qualification of the individual jurors who heard the case. What questions were asked and answers made on the *voir dire* of the jury panel are not in the record. We assume that the examination of the prospective jurors was sufficient to disclose any bias or prejudice in the mind of any prospective juror. The fact that a member of a jury has suffered the loss of a relative by an automobile accident is no indication that such juror is biased or prejudiced against a defendant involved in a different accident causing the death of a person who, so far as the record shows, was a stranger to the juror so affected.

Defendants assert that two verdicts were, in fact, returned: That the jury first returned a verdict in favor of the plaintiff and against defendants for damages without stating an amount, and that the jury was then instructed by the court to retire and agree on a specific amount of damages, and having done so, returned with a verdict for eight thousand dollars. The proceedings had with reference to the return of the verdict, as claimed by defendants, are not shown in the record. We have only the statement made by defendants in their petition for a writ of error. The order of the trial court showing the return of

the verdict is, in all respects, regular and in the usual form, and we assume that it is correct in the absence of a contrary showing in the record. For the foregoing reason we cannot consider the assignment of error with respect to the allegedly improper return of the verdict.

No prejudicial error is apparent in the trial of this action, and the judgment of the Circuit Court of Webster County is therefore affirmed.

*Affirmed.*