# CHARLESTON.

## DEPUTY v. KIMMELL.

### Submitted January 20, 1914. Decided February 3, 1914.

1. STREETS AND HIGHWAYS—*Law of the Road—Mutual Rights.*

   The rights of pedestrians and drivers of automobiles, when using ‚streets or other public highways, are mutual, equal and coordinate, except as varied by the nature of the appliance or mode of travel employed; and as long as each observes the reciprocal rights of the other neither will be liable for any injury his use may cause. (p. 597).

2. SAME.

   A person using a public highway owes the double duty to avoid danger to himself by another having an equal right to such use, and the infliction of injury upon such other person. Both must exercise that degree of care which a reasonably prudent man would exercise under the same circumstances. (p. 598).

3. SAME—*Law of Road—Operation of Automobile.*

   Because of the character of the vehicle and the unusual dangers incident to its use, a greater degree of care is required of the operator of an automobile, while on the public highway, and especially at street crossings, than is required of persons using the ordinary or less dangerous instruments of travel. He should exercise such care in respect to speed, warnings of approach and the management of the car as will enable him to anticipate and avoid collisions which the nature of the machine and the locality may reasonably suggest likely to occur in the absence of such precautions. (p. 598).

4. SAME—*Operation of Automobile—Care Required—Children.*

   The vigilance and care required of the operator of an automobile vary in respect of persons of different ages or physical conditions. He must increase his exertions in order to avoid danger to children, whom he may see, or, by the exercise of reasonable care, should see, on or near the highway. More than ordinary care is required in such cases. (p. 599).

5. SAME—*Operator of Automobile—Care Required—Obstructed View.*

   Where a wagon or other vehicle obscures or obstructs his view of a street crossing, when the presence thereon of others may reasonably be anticipated, extra vigilance and caution are required of the auto operator, in order to prevent injury to persons on such crossing. (p. 601).

6.  SAME—*Injury to Pedestrian—Contributory Negligence.*

The mere negligent act of one person will not excuse negligent injury to him by another.  If, therefore, a person who negligently places himself in a situation of imminent danger is injured by one who by the exercise of reasonable care could have avoided such injury, the negligence of the former will not bar recovery.  (p. 603).

7.  SAME.

A person lawfully in a public highway may rely upon the exercise of reasonable care by drivers of vehicles to avoid injury.  Failure to anticipate omission of such care does not render him negligent.  A pedestrian is not bound, as a matter of law, to be continuously looking or listening to ascertain if automobiles or other vehicles are approaching, under penalty that if he fails to do so and is injured his own negligence will defeat recovery of damages sustained.  (p. 603).

8.  NEGLIGENCE—*Contributory Negligence—Children—"Ordinary Care."*

In determining the question of contributory negligence, the conduct of children should not be judged by the same rules which govern that of adults.  Ordinary caution for them is that degree of care and prudence which children of the same age are accustomed to exercise under like circumstances.  (p. 603).

9.  SAME—*Pleading and Proof.*

In order to recover, it is unnecessary for plaintiff to prove literally the acts of negligence averred in the declaration.  If the allegations are substantially proved, this is sufficient.  Hence, an instruction, in an action of case for personal injury, which tells the jury that it can not find for plaintiff unless it believes from the evidence "that the defendant was negligent in the very manner set out in the declaration," is erroneous, and should be refused.  (p. 605).

Error to Circuit Court, Mineral County.

Action by Dewey Deputy, an infant, against E. G. Kimmell. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Chas. N. Finnell* and *Frank C. Reynolds,* for plaintiff in error.

*R. F. Leedy* and *W. H. Griffith,* for defendant in error.

LYNCH, JUDGE:

The injury, damages for which plaintiff seeks recovery by an action of trespass on the case, was inflicted by defendant in the operation of an automobile on the streets of Keyser.

The car collided with plaintiff at a street crossing, and within a few feet of the curb, over which he had just stepped into the street. At that time, he was ten years and six months old. In company with him were two companions, one eleven, the other nine years old. They were interested in the pictures of noted baseball players, contained in a box of candy purchased by one of them at a store near the crossing. These they were examining, as they leisurely approached and entered upon the crossing at the time of the collision.

Defendant drove his car along Piedmont street, and thence to the left over the crossing and into Orchard street. As the car entered on the crossing, it collided with two of the three boys, knocking plaintiff to the pavement, thereby causing the injury.

The trial court entered judgment for plaintiff on the jury's finding on the facts. Hence, the case is here on writ of error.

While defendant admits the collision and its resultant effect, he denies liability on the ground that but for the negligence of the plaintiff the collision would not have occurred. But the question of defendant's negligence, and that of plaintiff, if any, contributing to the injury, were submitted to the determination of the jury; and its findings can not be disturbed, except for good and sufficient cause.

Was defendant negligent? He was lawfully on the public highway. It was open alike to him and to the plaintiff. Their rights thereon were mutual and coordinate. The rights of the one were not superior to the rights of the other. Highways are constructed and maintained, at public expense, for public use by all persons alike, without limitation or restriction, save only that the use must conform to the well established rules and regulations prescribed by law.

That the use of automobiles on the highways for business or recreation is lawful, is no longer open to question. Such use involves only the application of a new appliance and mode of travel, rather than any new legal principle. It does not exclude or seriously interfere with the original modes in which the highways were used, but simply adds another use in furtherance of the general object for which they were dedicated. But new appliances and modes of travel must

be exercised with due regard for the rights of others using the highways; "and as long as such care is exercised the owners will not be liable for any injury their use may cause". Berry on Automobiles §115, and numerous cases cited.

So that, in whatever manner or for whatever lawful purpose one uses a public highway, he owes a double duty: (1) to avoid danger to himself by another having the right to such use, and (2) to avoid infliction of an injury upon such other person. Both must exercise such care as reasonably prudent persons would exercise under the same circumstances and conditions, in order to avoid being injured or causing injury. *Springs Co.* v. *Brown*, 165 Ind. 465; *Hall* v. *Compton*, 130 Mo. App. 675; 28 Cyc. 27, 29; Berry on Automobiles, §§128, 150, 163, 171, 173; Huddy on Automobiles, §§84, 95, 99, 101; Babbitt on Motor Vehicles, §913.

But what may be due and reasonable care in the use of a highway under some circumstances, may be negligence under others. No inflexible rule applicable alike to all cases has been or can be definitely stated. Each case must be determined upon its own peculiar facts. The degree of care varies also to some extent with the character of the vehicle. There is an obvious difference in that respect between the use and operation of a road-wagon and an automobile. The latter has weight and power, and also greater capacity of speed and agility in its movements. It responds more readily to the will of the operator. Therefore, "the operator must enlarge to a commensurate extent the degree of vigilance and care necessary to avoid injuries which the use of his vehicle has made more imminent". Berry on Automobiles §119. "Moving quietly as it does, without the noise which accompanies the movements of a street car or other ordinary heavy vehicle, it is necessary that caution should be continuously exercised to avoid collisions with pedestrians unaware of its approach. The speed should be limited, warnings of approach given, and skill and care in its management so exercised as to anticipate such collisions as the nature of the machine and the locality might suggest as liable to occur in the absence of such precautions". *Id.*, §§124, 154; Huddy on Automobiles, §95.

On this subject the observations of the court in *Irwin* v.

*Judge,* 81 Conn. 492, are pertinent. "To persons riding along or crossing our public roads, and especially our city streets, the rapidly moving automobile is a source of constant danger. Their great weight and speed power and resulting momentum render the consequences of a collision with them much more serious than with ordinary carriages even moving at a higher rate of speed, and it is much more difficult to avoid, and 'much more confusing to attempt to avoid, the rapidly moving automobile than the street railway car, which has a fixed and known direction and course upon the tracks While owners of automobiles have the right to drive them upon public streets, yet the proper protection of the equal rights of all to use the highways necessarily requires the adoption of different regulations for the different methods of such use; and what may be a safe rate of speed at which to ride a bicycle or drive a horse may be an unreasonably rapid rate at which to drive an automobile in the same place. For the reasons stated, and others which might be given, driving of an automobile at a high rate of speed through city streets at times when and places where other vehicles are constantly passing, and men, women and children are liable to be crossing; around corners at the intersection of streets, or in passing street cars from which passengers have just alighted, or may be about to alight; or in other similar places and situations where people are liable to fail to observe an approaching automobile, the driver is bound to take notice of the peculiar danger of collisions in such places. He can not secure immunity from liability by merely sounding his automobile horn. He must run his car only at such speed as will enable him to timely stop it to avoid collision. If he fails to do so, he is responsible for the damage he thereby causes". See also *Tudor* v. *Bown,* 152 N. C. 441, 21 Am. & Eng. Ann. Cas. 646, and note; *Liebrecht* v. *Crandall,* 110 Minn. 454; *Laufer* v. *Traction Co.,* 68 Conn. 475, 37 L. R. A. 533; *Cook* v. *Traction Co.,* 80 Md. 551; Berry on Automobiles, §§128, 173.

The vigilance and care required vary also in respect of persons of different ages or physical conditions. The operator of an automobile must increase his exertions in order to avert danger to children, whom he may see or by the exercise of

reasonable diligence and attention can or should see on or near the highway. Their lack of capacity to apprehend and guard against danger makes such care and caution necessary. *Thies* v. *Thomas,* 77 N. Y. S. 276; *Buscher* v. *Transportation Co.,* 106 N. Y. App. Div. 493; *McDonald* v. *Street Railway Co:,* 80 N. Y. App. Div. 233; Huddy on Automobiles, §81. In the first case cited, the essence of the holding is that one in charge of an automobile is required to exercise more than ordinary care to avoid injury to children whom he meets in a public thorofare. *Gross* v. *Foster,* 134 N. Y. App. Div. 243, 118 N. Y. S. 889; Berry on Automobiles §155.

But it is said defendant complied with all the conditions thus prescribed, and that, notwithstanding the cautious and prudent operation of the car, he could not avert the collision. That he had control of the car, that it was moving at moderate speed (varying, according to the estimate by himself, from 8 to 10 miles an hour), and that he repeatedly gave warning of the car's approach to the crossing—though in conflict with the evidence adduced by the plaintiff—may be conceded, and yet, under the principles announced by the authorities cited, defendant may have been negligent to such a degree as to warrant the verdict and judgment of which he complains. He admits that at a distance of 68 feet from the place of collision he saw plaintiff and his companion, near the crossing and leisurely approaching it from the opposite direction. He saw them; they did not see him or his car. He then knew, and they did not know, that he intended to drive the car onto Orchard street, or that he would necessarily pass them while on the crossing. Even had they heard the signals if given, they may have thought he would continue his course up Piedmont street—as in fact his course seemed to be, according to testimony not contradicted. He could also observe, and perhaps did observe, their inattention to the approach of the car, thus evidently demanding greater care on his part to avoid injuring them."

That defendant was driving the car at a greater rate of speed than he seemed willing to admit, appears from a reasonable interpretation of his testimony. The accident occurred after five o'clock P. M. He was on his way to keep a five

o'clock engagement, then overdue.    There is in this admission an indication of an attempt to hasten to his destination.

But, in the interval of time between his first and second view of the positions of the boys, the continuity of view, as defendant contends, was obstructed by a wagon preceding him along Piedmont street and to the left onto Orchard street, and hence over the crossing, and around which he was obliged to pass to the right and thence also to the left in order to turn onto Orchard street.    Assuming, however, the presence of the wagon at the time and place designated sufficiently proved under the conflicting testimony, it was a light and open delivery-wagon, not of sufficient height to obstruct defendant's view.    If it did in fact obstruct his view, it did not deprive him of the knowledge that the crossing was in constant use by pedestrians, and of the possibility of contact with those thereon, and especially with those who he knew would probably be thereon when the car reached it.    In *Gregory* v. *Slaughter*, 124 Ky. 345, 8 L. R. A. N. S. 1228, 124 Am. St. 402, the plaintiff was struck by an automobile as he was following a street car which was about to stop on the opposite side of a street to permit him to board it.    The defendant was driving his automobile at from eight to ten miles an hour on one of the principal thorofares of the city.    He was unable to see the crossing as he approached it because the street car was between him and the crossing, and, instead of stopping his automobile until the car passed, he merely changed his direction, so as to go around the passing car, when he was brought face to face with plaintiff at a distance too short to prevent a collision.    The court, holding defendant guilty of gross negligence, said:    ''He states the car was going at the rate of eight to ten miles an hour.    He was on one of the principal thorofares of a great city, and approaching a crossing where it was at least reasonable to expect pedestrians to be.    He could not see this crossing for the reason that the street car was between him and it, and thus obscured his vision.    Instead of stopping his automobile until the car passed and he could see whether there were pedestrians on the crossing beyond, he simply changed his direction so as to go around the passing car, and by his own act was

brought face to face with the appellee at a distance too short
to prevent the collision at the rate he was moving.   This was,
in itself, gross negligence to the verge of recklessness.   In
practical result there was no difference between what he did
and if he had shut his eyes and driven his automobile over the
street crossing without observing whether any one was in his
way or not.''

But there is a further infirmity in the argument based on
the obstruction.   The wagon turned around the corner to the
left near the curb.   Defendant passed to the right of the
wagon, and then turned to the left onto Orchard street, thus
placing the position of the boys and the curb at which he
first saw them to his right.   The streets at their intersection
are 30 feet between the curbs.   His car should have been, and
so far as appears was, on the right hand side of Piedmont
street.   At least, the provisions of §8, Ch. 32, Acts 1911, re-
quired him to pass to the right of the intersection of the
center line of the two streets in turning to the left into Orchard
street.   If duly attentive to the operation of his car, he had
sufficient space and opportunity to observe the crossing and
the danger to be avoided.   But at that time he was, according
to one witness whose testimony he does not deny, engaged
in looking at property owned by him located immediately in
front of the intersection of Orchard street and Piedmont
street, with which the former connects but beyond which it
does not extend.

But whether defendant was negligent was a question for the
determination of the jury.   It did determine the question
against his contention; and we can not, under the facts and
circumstances thus far detailed, reach the conclusion that its
findings are not correct, especially in view of the conflict of all
the evidence introduced on the trial before the jury.

We reach the same conclusion also upon the question of
contributory negligence of the plaintiff.   An acccident seldom
occurs which, in some aspect or view, is not in part due to
the negligence of both parties affected.   In this instance, there
was in some degree negligence on plaintiff's part.   The duty
imposed by law on pedestrians required him to exercise some
care and caution for his own safety.   But was his negligence,

if any appears, such as to preclude recovery? We answer that question also in the negative, as did the jury. In its view, the negligence attributable to defendant was the proximate cause of plaintiff's injury.

As stated, the care to be exercised by pedestrians using the highways varies with the circumstances of each particular case. The mere fact of negligence will not excuse the infliction of an injury, where by due care and caution the injury may be avoided by the one inflicting it. One may negligently place himself in a situation where danger may reasonably seem imminent; yet if injury is avoidable by another through the exercise of reasonable care, the carelessness of the person affected does not excuse the infliction of an injury. *Railway Co.* v. *Spencer,* 104 Va. 657; Davids on Motor Vehicles, §118; *Green* v. *Railroad Co.,* 143 Cal. 31, 101 Am. St. 88; *Railroad Co.* v. *Henderson,* 47 Ill. 408; *Riedel* v. *Traction Co.,* 69 W. Va. 18; *Railroad Co.* v. *Corbin,* 110 Va. 700.

A person in a public highway may rely upon the exercise of reasonable care on the part of drivers of vehicles to avoid injury. A failure to anticipate the ommission of such care does not render him negligent. *Caesar* v. *Coach Co.,* 45 Misc. 331, 97 N. Y. S. 395; *Hayward* v. *Railroad Co.,* 74 N. J. L. 678, 8 L. R. A. N. S. 1062; *Kathmeyer* v. *Mehl,* 60 Atl. (N. J. L.) 40; *Hennessey* v. *Taylor, supra; Spina* v. *Transportation Co.,* 96 N. Y. S. 270; *Buscher* v. *Transportation Co., supra.*

What may be deemed negligence by adults may not be chargeable as negligence by infants. In determining whether or not a plaintiff is guilty of contributory negligence, the conduct of children should not be judged by the same rules which govern that of adults. Ordinary care for them is that degree of care and prudence which children of the same age are accustomed to exercise under like circumstances. Huddy on Automoblies, §81; Berry on Automobiles, §161; *Buvrant* v. *Wolfe,* 126 La. 787; *Lynch* v. *Shearer,* 83 Conn. 73; *Verdon* v. *Crescent Automobile Co.,* 76 Atl. 346; *Marius* v. *Motor Delivery Co.,* 131 N. Y. S. 357. "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and

caution toward them must calculate upon this and take precaution accordingly." *Fieker* v. *Railroad Co.,* 7 Ohio N. P. 600; *Harriman* v. *Railroad Co.,* 45 Ohio St. 11, 27. A pedestrian is not bound, as a matter of law, when using a public highway, to be continuously looking or listening to ascertain if automobiles or other vehicles are approaching, under penalty that upon his failure to do so, if he is injured, his own negligence must be conclusively presumed. *Hennessey* v. *Taylor,* 189 Mass. 583, 3 L. R. A. N. S. 345; *Gerhard* v. *Motor Co.,* 119 N. W. 904, 20 L. R. A. N. S. 232. Such negligence, to avail as a defense, must be proved by defendant, unless it sufficiently appears from plaintiff's testimony. *Millsaps* v. *Brogdon,* 134 S. W. 632, 32 L. R. A. N. S. 1177.

This action was twice tried, with the same result except as to amount, the first finding being more favorable to the defendant. Complaint is now made, however, that the case as submitted on the second trial, perhaps on both, was on the theory that plaintiff's injury permanently disabled him, when in fact, as defendant contends, its effect was only temporary. But, on whatever theory submitted, no substantial reason appears from the record to justify interference with the result of the trial for the reasons assigned. The plaintiff, according to the contention urged in his behalf, and to some degree sustained by the proof, is that he was violently knocked down and run over by the car; that his body and limbs were bruised; that thereafter he was unconscious for several hours; that his head was injured, and his memory impaired. With this proof before it, we can not say the amount returned is unreasonable. On the contrary, it seems to us reasonable and just, even though the injury thus inflicted may not in fact result in permanent physical disability.

Nor do we find the instructions amenable to the criticism urged by counsel. At least, they do not so far incorrectly propound the law applicable to the facts appearing in the record as to warrant reversal. Of these, 2 and 3 are criticised because given on the theory of permanent injury to plaintiff. If so, there is in the record evidence tending to some extent to sustain that theory. Plaintiff's mother testified that his memory is impaired, that he is now forgetful; that "he com-

plained of his head, and did all last winter; he was kept out of school a great deal." " He has an earache, and dizziness in his head." "He vomited blood nearly all night," the night of the accident, and "from ten o'clock until four the next morning, and then it ran out of his mouth on the pillow." "I could not raise him up to give him anything to eat; if I raised him up he would start to vomit, and I had to keep him" in bed for a period of nine days after the accident. Instruction number 6 fairly presents the law applicable to the facts appearing in the record.

Instructions numbers 1 and 3, proposed by defendant, were properly refused; the first, because it was misleading and would have told the jury that it could not find for the plaintiff unless it believed from a preponderance of the evidence "that the defendant was negligent in the very manner set out in the declaration." No such rigid, inflexible rule obtains. It is sufficient if plaintiff substantially proves the negligence averred. The court therefore properly modified the instruction accordingly. Number 3 as proposed was properly refused, because not in accord with the principles herein announced. As modified and given, it presented defendant's contentions in a light more favorable than was allowable under our view of the law applicable to the facts of the case.

Defendant's objection to the competency of the plaintiff and the two boys present when the accident occurred to testify is not tenable. Their statements show sufficient capacity to understand and comprehend the nature of an oath.

Finding no reversible error, we affirm the judgment.

*Affirmed.*