R. O. SEWELL *v.* L. W. LAWSON

(No. 8004)

Submitted October 30, 1934. Decided November 20, 1934.

528

*Walter G. Burton* and *Sanders & Crockett,* for plaintiff in error.

*John R. Pendleton,* for defendant in error.

WOODS, PRESIDENT:

The plaintiff, R. O. Sewell, who, together with R. A. Kirk, owned and operated a filling station, sought by this action to recover damages for severe personal injuries, due to the alleged negligent operation on the part of the defendant of the latter's car, while endeavoring to place the same on the grease rack maintained by the owners of, and in connection with, the filling station. Error is prosecuted to the action of the trial court in setting aside a verdict of $2,500.00 in favor of the plaintiff and entering judgment for defendant.

The issues raised by the record are: (1) whether the evidence is sufficient to support a finding of negligence on the part of the defendant; and, if so, (2) whether plaintiff was guilty of contributory negligence as a matter of law?

The rack was constructed of cross-ties and heavy boards, and, except for the absence of certain small blocks, or chucks, at the rear end of both runways, corresponded substantially with numerous homemade grease racks in the community. It was three feet high and stood at a point where the ground was two and one-half feet lower than the concrete surface, thus making the runways, which were fifteen feet in length, approximately six inches higher than the concrete. The runways were reached by a five-foot incline. A guide rail extended the length of each runway. Three feet from the end of the rack opposite the approach stood a large board wall. A three foot board extended from, and in pro-

longation with, each of the runways to the wall, and between such extension was a small platform two and one-half feet wide, which enabled the service men to pass in front of the car being serviced. There was also sufficient room on either side of the rack for service men to walk.

In placing a car upon the rack an operator was supposed to drive up the incline and inside the guide rails, continuing forward until the back wheels had gotten on the runways. Plaintiff during his six years' experience with the particular rack had always directed the operator from the platform hereinbefore mentioned, which, according to plaintiff's evidence, was the only position from which he might direct with certainty.

The defendant, who, to plaintiff's knowledge, had driven cars for years, drove a Chrysler 80 (120″ wheel base), which he had had only a few days, into plaintiff's place of business, and up to the grease rack for the purpose of having the oil changed. No suggestion was made that plaintiff place the car on the rack. Plaintiff took his customary position at the center of the platform facing the car, for the purpose of directing defendant in placing the car on the rack.

According to the plaintiff's case, the plaintiff, just before the front wheels reached the guides, thinking that the same had been cut too far to the right, threw up his hands and called to defendant to stop; that the car continued up the incline and then suddenly lunged forward, "the motor wide open", knocking down both the plaintiff and the board wall; that the car did not stop until it had gone fifty-six feet beyond the rear end of the rack. This unexpected movement, according to plaintiff, was attributable to lack of care in the operation of the car, the inference being that defendant had applied pressure to the accelerator instead of the foot brake. This theory is borne out by the fact that there was nothing mechanically wrong with the car after the accident. Such action on the part of the driver is not consonant with the exercise of due care. The law requires that one who operates an automobile in public places should be reasonably capa-

ble of doing so. The explanation of the defense was that the three-foot extension between the rack proper and the board fence gave way under the weight of the right wheel of the car, thereby throwing the car forward against the plaintiff and the board fence. Without further comment, it suffices to say that the evidence, in our opinion, was sufficient to support a finding of negligence on the part of the defendant.

The contention that the plaintiff was guilty of contributory negligence as a matter of law is based primarily upon the fact that the plaintiff voluntarily took a position on the rack directly in front of defendant's automobile, with knowledge that the rack was not equipped with blocks; in other words, that, to any ordinarily prudent person, the probability of injury was clear, open and obvious.

Plaintiff undoubtedly had a right to assume that the defendant was a capable driver until the contrary appeared; and that the latter would exercise reasonable care in mounting the rack. And failure on plaintiff's part to anticipate omission of such care did not render him negligent. *Deputy* v. *Kimmell,* 73 W. Va. 595, 80 S. E. 919; *Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601. As heretofore stated, he had taken the only position from which another might be directed with certainty onto the rack. Due to the speed with which the car lunged forward, the ordinary six or eight inch block used in connection with some of the racks in the community could not have materially checked, much less stopped, its forward movement; and the plaintiff did not have time to escape. Whether or not plaintiff was contributorily negligent, was, under the circumstances, a matter for the jury. They found, under defendant's instructions, that the absence of blocks was not the proximate cause of the accident. *Barlow* v. *Sterr,* (N. J.) 166 Atl. 708.

In view of the record, we must reverse the judgment of the circuit court of Mercer County, re-instate the jury verdict, and enter judgment here in favor of the plaintiff.

*Reversed and judgment entered.*