FRANK SKAFF

*v.*

HENRY DODD, *et al.*

(No. 9932)

Submitted September 3, 1947.   Decided October 21, 1947.

*Kay, Casto & Amos* and *Vincent V. Chaney,* for plaintiffs in error.

*P. G. Meador,* for defendant in error.

RILEY, JUDGE:

In this action of trespass on the case to recover damages for alleged personal injuries, instituted in the Court of Common Pleas of Kanawha County, the plaintiff, Frank

Skaff, was awarded a judgment based upon a jury verdict in the amount of twenty-five hundred dollars against the defendants, Henry Dodd and The Automotive Parts Company, an Ohio corporation, to which judgment the Circuit Court of Kanawha County refused a writ of error and supersedeas on the ground that the judgment of the court of common pleas was plainly right. To the judgment of the circuit court defendants prosecute this writ of error.

Upon the trial in the court of common pleas, defendants under a plea of the general issue presented the defenses of: (1) lack of actionable negligence on the part of defendants; and (2) contributory negligence on plaintiff's part.

On January 5, 1946, about 8:45 in the morning, the plaintiff Skaff was severely injured when he was struck by a half ton pickup truck driven by defendant Dodd and owned by defendant, The Automotive Parts Company, on Virginia Street in the City of Charleston, some eighteen or twenty feet west of its intersection with Summers Street. The width of Virginia Street at that point is thirty-two feet from curb to curb, the concrete for the street having been poured in such manner as visibly to divide the surface into three well defined strips, the center strip being eleven feet wide, and those on each side ten and one-half feet. Although these concrete strips are referred to in the record as "lanes," there were no actual traffic lanes or cross-walks marked upon the surface of the street. So far as the record discloses at the time of the alleged injury, the intersection was controlled by electric traffic lights installed on all four corners of the intersection of the two streets.

Shortly prior to the injury plaintiff had boarded a bus of Charleston Transit Company for the purpose of travelling to his place of employment, which was located on the north side of Virginia Street about forty feet west of the intersection heretofore noted. The bus, proceeding east on Virginia Street, was brought to a stop at the southwest corner of Virginia and Summers Streets for the purpose

of discharging and taking on passengers. According to the record, it had stopped parallel to, and about one foot north of, the southern curb of Virginia Street, with its front flush or almost flush with the curb line of the sidewalk on the western side of Summers Street.

At the time the bus stopped, the line of traffic following, including a beer truck and a pickup truck heretofore mentioned, also stopped, all vehicles in the line at that time being in the strip or "lane" on the south of Virginia Street. The bus was thirty-two feet long and eight feet wide; the beer truck was twenty-eight feet long and six feet, seven inches wide.

Plaintiff Skaff alighted from the door at the right front of the bus, stepping out on the sidewalk. He walked west on the sidewalk paralleling Virginia Street until he had passed the rear end of the bus. There he stepped from the sidewalk into the street, preparatory to crossing the same. As he reached and stepped out into the open portion of the street he was struck by the pickup truck.

The defendant Dodd testified that when the bus stopped to discharge and take on passengers, he stopped his truck and upon seeing the traffic light at the intersection turn green, he pulled out of the line of traffic into the center of the street and proceeded around the beer truck and passed the bus at six to eight miles an hour and then proceeded east on Virginia Street across Summers Street. It was while defendants' truck was passing the space between the beer truck and the rear of the bus that plaintiff was struck.

It is not clear from this record whether defendants' truck was immediately behind or several cars behind the beer truck, and the record conflicts on whether Skaff looked in both directions or just in the direction of the traffic light immediately before stepping from the space between the beer truck and the bus; and likewise the evidence conflicts as to whether the traffic light controlling the movement on Virginia Street was red or green at the time defendants' truck pulled out of the line of traffic for

the purpose of crossing the intersection. The speed of the truck is variously estimated in the record from a minimum of six to eight miles an hour to a maximum of thirty-five miles an hour, but it seems clear from this evidence that the place where plaintiff was crossing Virginia Street at the rear of the bus, was west of the extension of the curb lines of the western sidewalk on Summers Street, for from the position of the bus as it was stopped, with the thirty-two foot length thereof taken into consideration, plaintiff was necessarily struck a number of feet west of the westerly lateral line of the western sidewalk of Summers Street if extended across Virginia Street.

Several pertinent ordinances of the City of Charleston dealing with motor vehicles and traffic were introduced at the trial. Section 33 of Chapter 18 of the ordinance provides, in part: "No person shall drive a motor vehicle upon any street or highway within the city at a speed in excess of that indicated for particular districts or locations, as follows: Passenger vehicles and trucks less than 2 tons loaded capacity: * * * In business and congested districts 20 M.P.H.; at intersections in business and congested districts 15 M.P.H. * * *; when passing busses while loading or unloading 8 M.P.H." Section 19 of the same chapter provides in part:

> "(A)  Green alone or 'go':
>
> * * *
>
> "(2)  Pedestrians facing the signal may proceed across the roadway within any marked or *unmarked* crosswalk.  (Italics supplied)
>
> * * *"

And finally Section 63 (dealing with pedestrians) of Chapter 18 provides:  "* * *

> "(b)  Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.

"(c)   Every pedestrian crossing a roadway at any point other than within a crosswalk, shall yield the right of way to all vehicles approaching upon the roadway.

* * *

"(e)   Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, * * *."

From the briefs of counsel for the parties litigant, it seems clear that primary negligence on the part of defendants was a jury question, and, in our opinion, this is necessarily so because at the time injured, plaintiff was attempting a crossing between the bus and the beer truck in a northerly direction on Virginia Street at a place other than a cross-walk.   Sections 19 (2) and 63 (b) of Chapter 18 of the ordinances of the City of Charleston deal with both "marked" and "unmarked" cross-walks. A cross-walk whether marked or unmarked, is an extension of the sidewalk lines over streets at street intersections. *Panella* v. *Weil-McClain Co.,* 329 Ill. App. 240, 67 N. E. 2d 699. The evidence in the instant case discloses that the front of the bus had stopped at or near the easterly line of the westerly cross-walk over Virginia Street, which cross-walk was approximately ten feet wide, and the bus being thirty-two feet long, its rear was approximately eighteen to twenty feet west of the westerly cross-walk over Virginia Street.   Subparagraph (c) of Section 63 of Chapter 18 of the ordinances provides:   "Every pedestrian crossing a roadway at any point other than within a cross-walk, shall yield the right of way to all vehicles approaching upon the roadway."   It follows under this ordinance that plaintiff in proceeding across Virginia Street, as he did, should yield the right of way *to all vehicles approaching,* including the pickup truck driven by the defendant Dodd, and in so yielding it became necessary for him to use reasonable care for his own safety.

Likewise, notwithstanding plaintiff was injured while crossing the street at a place other than a cross-walk, and

therefore under a duty to yield the right of way, there was under subparagraph (e) of Section 63, Chapter 18 of the ordinances a concomitant duty on the part of the defendant Dodd to exercise due care to avoid colliding with plaintiff. This subparagraph reads: "Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, * * *." As has been aptly said by this Court, speaking through Judge Lynch in *Deputy* v. *Kimmell*, 73 W. Va. 595, Pt. 1, Syl., 80 S. E. 919: "The rights of pedestrians and drivers of automobiles, when using streets or other public highways, are mutual, equal and coordinate, except as varied by the nature of the appliance or mode of travel employed; and as long as each observes the reciprocal rights of the other neither will be liable for any injury his use may cause." And the ordinances of the City of Charleston are so worded that the rule in the *Deputy* case is especially applicable in the instant case. In *Oldfield* v. *Woodall*, 113 W. Va. 35, Pt. 3, Syl., 166 S. E. 691, this Court held: "Disregard of a requirement of a statute or an ordinance is *prima facie* negligence when it is the natural and proximate cause of an injury." And in *Jones* v. *Virginian Railway Co.*, 115 W. Va. 665, 177 S. E. 621, this Court held that in order to recover damages for alleged personal injuries based upon the violation of an ordinance or statute the violation must be the proximate cause of the alleged injury, and, where the evidence conflicts, the question of proximate cause is one of fact for the jury. See also *Ambrose* v. *Young*, 100 W. Va. 452, 130 S. E. 810.

But defendants say that plaintiff was guilty of contributory negligence as a matter of law. The case of *Slater* v. *Shirkey*, 122 W. Va. 271, 8 S. E. 2d 897, is cited and stressed in plaintiff's brief. The plaintiff in that case stepped suddenly from behind a standing vehicle in the path of a moving automobile. The evidence in that case showed that plaintiff did not look until he reached the center of the highway, which was about three or four feet from the rear of the parked vehicle, and that he then "leaped

into the path of the oncoming car instead of stepping back." In the case of *Yoder* v. *Charleston Transit Co.,* 119 W. Va. 61, 192 S. E. 349, the plaintiff, a pedestrian, testified that just before starting across the street she "looked in both directions and saw no vehicles approaching," though her view was unobstructed for a distance of two hundred feet, and having taken four steps from the curb and in order to escape being struck by a large passenger bus, which was bearing down on her, she ran into the path of an automobile traveling in the same direction. In that case this Court held that plaintiff was guilty of contributory negligence as a matter of law. In the instant case, however, there is substantial evidence to the effect that the pickup truck was parked immediately behind the beer truck, which was only twenty-eight feet long, and that when it reached the place where plaintiff was struck it had obtained, according to some witnesses, a speed of thirty-five miles an hour. The law in this jurisdiction is that a pedestrian does not have the burden of looking any certain number of times before crossing a street or highway. If the way appears clear, he may proceed, and his care in that respect is generally a question of fact for the jury. Pt. 2, Syl., *Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601. In the circumstances of this case, we are of the opinion that it was for the jury to find whether plaintiff, before stepping from behind the parked bus looked diligently, and having looked, because of the sudden change of the traffic signal and the rapid approach of the pickup truck from the line of parked cars, had no opportunity to avoid being injured, but, as in the case of primary negligence, the rule as to proximate cause likewise applies, and this question is one for jury determination. *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 547, 191 S. E. 558.

Error is assigned to the trial court's ruling in the giving of certain of plaintiff's instructions.

It is asserted that the giving of plaintiff's instructions Nos. 1, 2, 3, and 7 was prejudicial error. This assertion is based upon the grounds already disposed of in this opinion that (1) plaintiff was guilty of contributory negligence, as

a matter of law; and (2) that the instructions did not specifically negative contributory negligence. To support the last proposition defendants rely upon *Bragg* v. *Whitten Transfer Co.*, 125 W. Va. 722, 26 S. E. 2d 217, in which the Court held that the negativing of contributory negligence in the language "if you believe the plaintiff himself without negligence" was not sufficient. In that case this Court said: "The negation of contributory negligence is not specific. * * * The instruction lacks completeness, requiring the jury to have recourse to other instructions for ascertainment of facts from which contributory negligence may be inferred." Expressions in the challenged instructions in the instant case, such as, if the jury believe the plaintiff "while exercising ordinary care as aforesaid" (No. 1); "in attempting to cross Virginia Street was exercising ordinary care for his own safety" (No. 2); "was exercising ordinary care in attempting to cross Virginia Street at the point of injury immediately after leaving said bus" (No. 3); and, "was exercising ordinary care for his own safety at the time of injury" (No. 7), being insufficient, in themselves, to negative contributory negligence, the said several instructions, under our holding in the *Bragg* case, should have been refused. Instructions Nos. 3 and 7 aforesaid are also challenged for the further reason that they are in part based upon negligence which is prospective and speculative violation of the city ordinances. The language complained of in instruction No. 3, is to the effect that if the jury shall believe that "the truck owned and operated by the defendants was being driven *or was about to be driven past said bus*" (italics supplied); and the allegedly improper phraseology of No. 7 to the effect that if the jury further believe that the driver of the pickup had or *"just before the time of injury was about to enter the intersection of Virginia and Summers Streets"* (italics supplied). The language in these two instructions is inept and whether prejudicial we need not say, as these instructions must be amended on a new trial.

Error is also assigned to the giving of plaintiff's instruction No. 6, as amended, which instructed the jury that if

it should find for the plaintiff, they should consider the earning capacity of plaintiff "before the injury as compared with the present earning capacity; also the physical and mental suffering to which he was subjected to by reason of said injury * * *." It is contended, and we think rightly so, that there is no proper sequence between the alleged difference in plaintiff's earning capacity and the injury itself. It is to be noted that the words "present earning capacity" are separated by a semicolon from that part of the instruction which requires the jury to find damages that are the result of the injury.

Error is assigned to the trial court's refusal to give certain of defendants' instructions. Defendants' proferred instructions Nos. 4 and 5 were covered by other instructions given, and were properly refused. *Robertson* v. *Hobson,* 114 W. Va. 236, 171 S. E. 745; *Drake* v. *Clay Hardware & Supply Co.,* 110 W. Va. 63, 157 S. E. 35; *Browning* v. *Hoffman,* 90 W. Va. 568, 111 S. E. 492.

Defendants assign error to the trial court's refusal to give their instructions Nos. 9 and 10. Instruction No. 9 reads, in part: "* * * if such negligence, if any contributed proximately *in any way* to plaintiff's injuries." (Italics supplied.) We see no fault in this instruction except the use of the words "in any way," but this fault, in our opinion, is cured by the qualifying word "proximately." On the other hand, defendants' instruction No. 10 should have been refused because it reads in part: "If you believe that such negligence contributed *in any way* to plaintiff's accident and injury." (Italics supplied.) The words "in any way" are not qualified by the word "proximately" as in instruction No. 9, or other qualifying word or words, and for this reason the instruction was properly refused.

The foregoing disposes of all the errors asserted by the defendants, and for the reasons heretofore stated, the judgments of the Court of Common Pleas and the Circuit

Court of Kanawha County are reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*