PAUL JACKSON DAVIS, *an Infant, etc.*

*v.*

FLORA B. PUGH, *et al.*

(No. 10149)

Submitted October 4, 1949. Decided December 20, 1949.

LOVINS, JUDGE, not participating.

*Payne, Minor & Ray, R. E. Stealey,* for plaintiff in error.

*Watts, Poffenbarger & Bowles, Martin C. Bowles,* for defendant in error.

HAYMOND, PRESIDENT:

This action of trespass on the case was instituted in the Court of Common Pleas of Kanawha County by the plaintiff, Paul Jackson Davis, an infant, suing by his next friend, to recover damages from the defendants, Flora B. Pugh, H. R. Pugh, Jr., Jean Pugh Withrill, Joan H. Pugh and W. A. Pugh, partners trading as Pugh Furniture Company, and J. Stewart Fravel, herein referred to as the defendant, for personal injuries sustained by the plaintiff as the result of the negligence of the defendants when an automobile · owned and driven by the defendant Fravel struck and seriously injured the plaintiff on a public highway in the City of South Charleston, Kanawha County, on September 21, 1946. At the conclusion of the evidence introduced in behalf of the plaintiff, on his motion, the defendants, other than Fravel, were dismissed from the case. The trial proceeded against Fravel as the sole defendant and resulted in a verdict of the jury against him in favor of the plaintiff for $5,000.00. The trial court overruled the motion of the defendant to set aside the verdict and grant him a new trial and, on January 28, 1948, entered judgment upon the verdict. Upon a writ of error to the Circuit Court of Kanawha County the judgment of the court of common pleas was affirmed on January 18, 1949, and to the latter this writ of error was awarded by this Court on March 7, 1949.

The accident which gave rise to this controversy occurred on a public highway known as McCorkle Avenue in the City of South Charleston, on the evening of September 21, 1946. The day was warm and bright and the sun had not set at the time the accident happened.

McCorkle Avenue is a part of U. S. Route 60 and for more than two hundred and forty six feet east and for approximately one hundred and thirty feet west of the

place of the accident follows a straight course on a practically level surface and is divided into two sections separated by a traffic island which parallels each section and is interrupted by cross lanes at various points. The width of the south section which is used for one way traffic to the east is thirty feet between the curbs and that section contains three lanes of travel. The distance from the place of the accident to the nearest cross lane through the traffic island to the east is one hundred and thirty eight feet and the nearest intersecting street is one hundred and eight feet farther to the east. A sidewalk four feet in width runs along the south side of the avenue. On a lot abutting the sidewalk are two stumps about nineteen feet apart. One of these stumps is nearer the sidewalk than the other and is about four feet south of the walk. The place of the accident in one of the traffic lanes is almost directly opposite this stump. On the south side of the highway at a distance of one hundred and eighty six feet west of the place of the accident is a welding shop, and near this point the highway to the west curves to the right. Each one of two travel lanes in the southern section is eleven feet in width and the other lane which adjoins the south curb is eight feet in width. The northern section of the highway is used for one way traffic to the west. The location of the highway and the stated distance existed at the time of the accident and were unchanged at the time of the trial.

The plaintiff, a schoolboy about twelve years of age when the accident occurred, lived on the north side of the highway, had crossed it three or four times daily on his way to school for some time before he was injured, and was familiar with that part of the avenue and the existing traffic conditions. Shortly before he was hurt he came from his home to a point on the sidewalk a short distance west of the stumps when one of two boys in the lot threw a football toward the plaintiff. The football went beyond the reach of the plaintiff and into the lane of the south section of the highway which adjoins the traffic island. This lane is referred to in the evidence as number

three lane or the third lane, and the center lane which adjoins it is referred to as number two lane or the second lane. The plaintiff looked west along the highway and saw an automobile in the second lane approaching from the west near the welding shop. The plaintiff crossed that lane in front of the automobile which passed to his right. He continued across the south section until he entered the third lane which adjoins the traffic island and, at that point, while attempting to recover the football, he was struck by the automobile driven by the defendant which was traveling east in that lane. The plaintiff was knocked or thrown over the front end of the automobile and fell on the highway behind the automobile which, according to the testimony of three witnesses for the plaintiff and one witness for the defendant, continued for a distance of about one hundred and thirty eight feet east of the place of the accident before it came to a stop. The plaintiff was severely injured. His pelvis and both bones of his left leg were fractured and he sustained numerous cuts and bruises on other parts of his body. He was hospitalized for three weeks and confined to his bed at home for an additional period of five months.

There is a sharp conflict in the evidence as to the manner in which the accident occurred and the speed at which the automobile was traveling at the time it struck the plaintiff. The plaintiff testified that before leaving the sidewalk to go upon the highway he looked west, and saw only one automobile approaching from that direction at a speed of thirty five to forty miles per hour and that it was near the welding shop and in the second lane; that he did not run upon the highway but that his gait was "faster than a walk"; that he went to the football which was in the center of the third lane; that he picked up the football and when he did so the automobile struck him; that he did not see the automobile until just before it hit him; that it was then traveling at a speed of about forty miles per hour; and that he did not hear any sound from the brakes or the horn of the automobile. His two companions, boys fourteen and fifteen years of age, who were playing with

the football when he came to the sidewalk and who saw the accident, gave substantially the same testimony as that given by the plaintiff. Another witness for the plaintiff, who was traveling west in an automobile on the north section of the highway, saw the accident as he approached it from the east. He testified that he first saw the Fravel automobile when it was traveling east in the second lane near the welding shop; that there were two other automobiles traveling in front of it in that lane; that it was in the third lane when it hit the plaintiff; that the right front fender and the bumper struck him; that the Fravel automobile started to pass the automobiles in front of it at a point about "two-thirds of the distance" from the place of the accident to the welding shop; that he saw the football as it came into the street; that it struck near the center of the "island," bounced into the second lane and bounced again as the plaintiff reached for it when the Fravel automobile struck him; that the football had bounced in the center of the street when the defendant Fravel started to pass the automobile in front of him; that the plaintiff "ran out into the street"; that he did not know whether the plaintiff "got his hands on the football or not" before he was struck; that after the plaintiff was struck he was lying in the highway about fifteen feet east of the point where he was hit; and that when the Fravel automobile struck the plaintiff it was "a car length or so" in advance of the traffic in the center lane.

The defendant Fravel testified in his own behalf. He stated that he had been driving his automobile in the center lane; that he came into "lane number three," the lane "next to the island" and that he was traveling at the rate of twenty to thirty miles per hour. His version of the accident was expressed in his testimony in these words: "There were some cars ahead of me; I would say three. All of a sudden I saw a shadow; just like that (indicating), instantly shoot from in front of that other car and head first into the side of my car, back of the front wheel. The boy's head struck the hood of the car—he has a large head. One elbow struck this decoration

outside. I stopped the car instantly. The boy was probably, I would say, from fifteen to twenty feet behind my car. That's all I know about the accident." He stated that he did not see the plaintiff before he was hit; that he did not apply the brakes or sound the horn of the automobile for that reason; and that he did not see the football. One witness for the defendant testified that the automobile stopped about thirty five feet beyond the place where the plaintiff was lying after the accident.

By his numerous assignments of error the defendant seeks reversal of the judgments on these grounds: (1) The defendant was not guilty of actionable negligence; (2) the plaintiff was guilty of contributory negligence; (3) the trial court erred in refusing to submit interrogatories requested by the defendant; (4) the trial court erred in giving certain instructions offered by the plaintiff; (5) the trial court erred in refusing certain instructions offered by the defendant; and (6) the verdict is excessive.

As already indicated, the evidence is conflicting with respect to material facts bearing upon the speed of the automobile, the character of the opportunity afforded the defendant to discover the presence of the plaintiff in the highway, and the position of the plaintiff at the time he was struck by the automobile. The evidence in behalf of the plaintiff is that the speed of the automobile was approximately forty miles per hour when it hit him, in contrast to the evidence of the defendant that its speed at the time was from twenty to thirty miles per hour. Witnesses for the plaintiff stated that the automobile ran to the end of the traffic island, a distance of one hundred and thirty eight feet from the place of the accident, before it was brought to a stop. The defendant testified that he stopped his automobile instantly and within fifteen or twenty feet from the point at which the plaintiff lay on the highway after he was struck. The plaintiff and two of his witnesses saw the football strike the traffic island and bounce in the second traffic lane when the automobile traveling in the second lane was near the welding shop, a distance of one hundred and eighty six feet west of the

place where the accident occurred, and one witness for the plaintiff saw those movements of the football when the automobile of the defendant was "two-thirds" of the distance from the place of the accident to the welding shop, which, according to undisputed measurements, was one hundred and twenty four feet from the position of the football in the street. The defendant testified that he did not see the football at any time. Witnesses for the plaintiff testified that the plaintiff had picked up the football, or was in the act of picking it up, in the third lane, when the automobile hit him, and one witness said that the plaintiff had picked up the football and was standing in that lane when he was struck. In contrast the defendant testified that the plaintiff came "head first into the side of my car, back of the front wheel," and that he saw only a shadow before that act of the plaintiff. The verdict of the jury shows that the jury accepted the version of the plaintiff and his witnesses rather than that of the defendant; and under the evidence the jury was warranted in believing that the speed of the defendant was excessive, in the existing circumstances, that the defendant saw, or by the exercise of ordinary care should have seen, the football on the street, as a warning of the presence of the plaintiff on or near the highway, or saw or by the exercise of reasonable care should have seen, the plaintiff in the third lane, in sufficient time to enable him to control the operation of his automobile so as to avoid striking the plaintiff; and that the plaintiff did not strike the side of the automobile but that the front of the automobile struck him.

The theory of the plaintiff is that the accident was caused by the negligence of the defendant and that the plaintiff was without fault. The theory of the defendant is that he was not negligent in the operation of the automobile either as to the speed of the automobile or the character of the lookout which he maintained or otherwise, and that the plaintiff was negligent in entering the highway in the face of oncoming traffic and in failing to see the automobile of the defendant until just before it struck him. There is evidence in support of each theory and under the evidence the jury could have found for

either party upon the material factual issues in the case.

When the facts are controverted the questions of negligence and contributory negligence are for the jury. *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Chambers v. Princeton Power Company,* 93 W. Va. 598, 117 S. E. 480, 29 A. L. R. 1041; *Lindsey v. Bluefield Produce Company,* 91 W. Va. 118, 112 S. E. 310; *Walters v. Appalachian Electric Power Company,* 75 W. Va. 676, 84 S. E. 617; *Ewing v. Lanark Fuel Company,* 65 W. Va. 726, 65 S. E. 200, 29 L. R. A., N. S., 487; *Foley v. City of Huntington,* 51 W. Va. 396, 41 S. E. 113; *Raines v. Chesapeake and Ohio Railway Company,* 39 W. Va. 50, 19 S. E. 565, 24 L. R. A. 226; *Hanley v. City of Huntington,* 37 W. Va. 578, 16 S. E. 807. If a motorist has reason to anticipate the presence of a child, or sees a child, in a dangerous place on the highway, he must exercise reasonable care to avoid injuring it, and the question of negligence is generally for the jury to decide. Huddy, Cyclopedia of Automobile Law, Ninth Edition, Vol. 5-6, page 59. The undisputed evidence is that the plaintiff looked before he entered the highway, and there is positive evidence that, until just before he was struck, he and two other witnesses saw only one automobile, which the plaintiff avoided. In those circumstances he was not required, as a matter of law, under penalty of being contributorily negligent, to look continuously, while crossing the highway, to ascertain if the automobile of the defendant was approaching. As he had looked and found the highway free from nearby traffic, he had the right to rely upon the exercise of reasonable care by the defendant to avoid injuring him while he was on the highway. *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Skaff v. Dodd,* 130 W. Va. 540, 44 S. E. 2d 621; *Walker v. Bedwinek,* 114 W. Va. 100, 170 S. E. 908; *Ritter v. Hicks,* 102 W. Va. 541, 135 S. E. 601, 50 A. L. R. 1505; *Deputy v. Kimmel,* 73 W. Va. 595, 80 S. E. 919, 51 L. R. A., N. S. 989, Ann. Cas. 1916 E, 656. In such circumstances the question of contributory negligence is for the jury. *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Sewell v. Lawson,* 115 W. Va. 527, 177 S. E. 293; *Ritter v. Hicks,* 102 W. Va. 541, 135 S. E. 601, 50 A. L. R. 1505.

It is the peculiar province of the jury to weigh the evidence and to resolve questions of fact when the evidence regarding them is conflicting, and this province of the jury should not be invaded or disturbed by the court. *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorne v. Addison Bros. & Smith,* 119 W. Va. 479, 194 S. E. 771; *Jaggie v. Davis Colliery Company,* 75 W. Va. 370, 84 S. E. 941; *Norvell v. Railway Company,* 67 W. Va. 467, 68 S. E. 288, 29 L. R. A., N. S., 325. When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless it is plainly contrary to the weight of the evidence or is without any evidence to support it. *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield v. Akers,* 127 W. Va. 807, 33 S. E. 2d 140; *Webb v. Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898; *Ware v. Hays,* 119 W. Va. 585, 195 S. E. 265. The binding authority of the cited cases disposes of and denies the contentions of the defendant that, as a matter of law, he was not negligent, and that the plaintiff was guilty of negligence which proximately contributed to his injury.

The defendant offered two sets of special interrogatories, each of which would have propounded three specific questions to the jury. The first set, in substance, would have requested the jury to find (1) whether the plaintiff was capable of understanding the dangers "incident to running" into the highway to retrieve the football, under the existing circumstances; (2), if so, whether he was negligent in so acting; and (3), if so, whether his negligence proximately contributed to his injury. The second set requested the jury to answer these questions: (a) whether the plaintiff was capable of understanding the dangers "incident to crossing" the highway; (b), if so, whether he was negligent in attempting to cross the highway; and (c), if so, whether his negligence proximately contributed to his injury. The court refused to submit any of the interrogatories and of this the defendant complains. The separate single issues referred to in each of the interrogatories were neither numerous nor complicated; a special verdict as to any of them would not have

assisted the jury in arriving at a general verdict; and, to reach a general verdict for the plaintiff, the jury had to resolve all those issues in his favor under the evidence. The giving or the refusal of special interrogatories is in the sound discretion of the trial court and that discretion is subject to appellate review. *Lovett* v. *Lisagor*, 100 W. Va. 154, 130 S. E. 125; *Richards* v. *Iron Works*, 56 W. Va. 510, 49 S. E. 437; *Bridge Company* v. *Bridge Company*, 34 W. Va. 155, 11 S. E. 1009; *Kerr* v. *Lunsford*, 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668. In the *Lovett* case this Court held, in Point 2 of the syllabus: "It is not an abuse of such discretion for the trial court to refuse to submit special interrogatories to a jury in a case where the issues are few and uncomplicated, and it is apparent that special verdicts would not assist the jury in arriving at a correct conclusion." See *Bartlett* v. *Mitchell*, 113 W. Va. 465, 168 S. E. 662.

The action of the trial court in giving instructions numbered two and three, offered by the plaintiff, is assigned as error.

Instruction two told the jury, in substance, that it was the duty of the defendant to drive his automobile at a speed not in excess of thirty miles an hour, and that if the jury believed from a preponderance of the evidence that he drove the automobile in excess of that rate of speed, and as a proximate result of such speed, it struck and injured the plaintiff, the jury should return a verdict in favor of the plaintiff, unless the jury further believed from the evidence that the plaintiff was guilty of negligence which proximately contributed to the injury. The grounds of the objection to the instruction were that the speed of the automobile, under the evidence, could not have been the proximate cause of the injury; that the instruction did not properly negative contributory negligence; that it ignored pertinent facts and the particular fact that the defendant had the right of way over the plaintiff in the use of the highway at the time and the place of the accident. None of these grounds is well founded. Under the evidence the jury could properly find that the speed of the automobile was the proximate cause

of the collision. The instruction did not ignore the defense of contributory negligence, but specifically negatived any negligence of the plaintiff which proximately contributed to the injury, and in that respect it was not subject to the defect which vitiated instructions relating to this question in the cases of *Bragg* v. *C. I. Whitten Transfer Company,* 125 W. Va. 722, 26 S. E. 2d 217, and *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E. 2d 621. No pertinent facts were omitted from the instruction and, under the evidence, no right of way was established which gave the defendant any right superior to that of the plaintiff in the use of the highway. "In the absence of statutory or municipal regulation affecting the question, automobilists and pedestrians have equal rights in the street or highway, and neither a foot passenger nor a motorist has a priority of right over the other, and the conduct of both must be regulated by this rule. This right extends to all parts or sections of the highway, whether at established places of crossing or elsewhere thereon." Huddy, Cyclopedia of Automobile Law, Ninth Edition, Vol. 5-6, page 6.

Instruction three told the jury, in substance, that it was the duty of the defendant, in driving his automobile, to keep a reasonable lookout for persons using the highway and that if the jury believed from a preponderance of the evidence that the defendant did not keep a reasonable lookout and as the proximate result of his failure so to do, the plaintiff was injured, the jury should return a verdict for the plaintiff unless the jury further believed from the evidence that the plaintiff was guilty of negligence which proximately contributed to the injury. The objection to this instruction is that it is not applicable to the facts in evidence which, it is contended, show that the defendant, who was driving on the highway where he had a right to be at the time of the accident, by the exercise of the greatest care, could not have seen the plaintiff before the collision because the defendant's view of the plaintiff, when he came upon the highway, was obscured by other traffic to the right of the defendant. This objection is without merit. The evidence tends to show that the football, which fell and bounced on the

highway when the automobile of the defendant was at least one hundred and twenty four feet from it, could have been seen by the defendant, if he had maintained a proper lookout, and that its presence should have caused him to anticipate the entrance of a pedestrian upon the highway to recover the ball; and that, although the traffic on the right of the defendant apparently made it difficult for him to see the plaintiff when he entered, or was crossing, the highway, it does not appear, from the evidence, that if the defendant had been alert and had kept a reasonable lookout he could not have seen the plaintiff in time to have avoided the injury by the exercise of ordinary care. As to these facts and circumstances there was sufficient evidence on which to base the instruction and, as it correctly states the law and sufficiently negatives the defense of contributory negligence, the trial court did not err in giving it.

The defendant insists that the action of the trial court in refusing to give instructions two, seven, nine A, twelve, fourteen, sixteen and eighteen, offered by the defendant and in modifying and refusing to give instruction eleven as originally offered by the defendant, constituted reversible error.

Instruction two, a peremptory instruction which would have directed the jury to return a verdict for the defendant, was properly refused for the reasons set forth earlier in this opinion relating to the question of negligence and contributory negligence, which, under the evidence in this case, were questions for the jury.

Without stating in detail the language of instructions nine A, fourteen and sixteen, it is sufficient to say that they assumed certain material facts which were not shown by the evidence and, for that reason, they were properly refused. An instruction which assumes a fact as to which there is no competent evidence should not be given. *Williams* v. *County Court of Lincoln County*, 90 W. Va. 67, 110 S. E. 486; *Penix* v. *Grafton*, 86 W. Va. 278, 103 S. E. 106.

Instruction seven, in substance, is identical with in-

struction three offered by the defendant and given by the court. In consequence the refusal to give instruction seven was not error. Duplication of instructions is neither necessary nor desirable. *State* v. *Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *Franklin* v. *Pence,* 128 W. Va. 353, 36 S. E. 2d 505; *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E. 2d 641; *Robertson* v. *Hobson,* 114 W. Va. 236, 171 S. E. 745; *Drake* v. *Clay Hardware and Supply Company,* 110 W. Va. 63, 157 S. E. 35; *Browning* v. *Hoffman,* 90 W. Va. 568, 111 S. E. 492. The substance of instruction twelve, refused by the court, was incorporated in instruction eleven which, when slightly modified by the court, was given, and for that reason the refusal of instruction twelve was proper.

Instruction eleven, refused in its original form, was given with slight and immaterial modifications, and the action of the court in refusing to give the instruction in its original form and in giving it as modified was not prejudicial to any right of the defendant.

Instruction eighteen would have told the jury that if the jury should return a verdict in favor of the plaintiff, he could not recover as damages any amount for medical or hospital expenses in connection with his injury. As no claim for these items could be considered, or was involved, in this action and, in consequence, no evidence was, or should have been, introduced with respect to them, the instruction was properly refused.

The defendant assails the verdict on the ground that the amount awarded by the jury is excessive. The undisputed evidence is that the plaintiff was seriously and painfully injured; that he remained at a hospital for treatment for a period of three weeks; and that after his discharge from the hospital he was confined to his home for a period of five months. During the early treatment of his injury it appeared that it might be necessary to amputate his injured leg. At the time of the trial, fifteen months after the injury was inflicted, the plaintiff testified that when he runs or plays as he did before he was

hurt, he experiences pain in his leg. As to the extent of his recovery, the evidence is conflicting. One doctor, offered as a witness for the defendant, who examined the plaintiff about one month before the trial but who did not treat him for his injuries, testified that at that time the plaintiff walked with a slight limp. He also testified that the plaintiff had a slight muscular atrophy in his left leg, a slight tenderness in the area of the fractures of his leg, a slight swelling of his left ankle, and a five degree limitation of motion of that ankle when flexed toward the knee. He expressed the opinion that the plaintiff would suffer no permanent disability, that the swelling and the limitation of motion in the left ankle would disappear within six or eight months, and that, within a period of months, the plaintiff would be practically normal. The doctor who treated the plaintiff for his injury testified that the plaintiff had not completely recovered at the time of the trial, that it would be at least one year from that time until he would attain his maximum degree of recovery, and that there was a permanent shortening from one-half to three-fourths of an inch in his left leg which would cause him to limp permanently unless he wore a special kind of shoe or foot support. It is evident that the jury found, from the evidence, that the plaintiff, in addition to the pain and the suffering which he experienced, sustained some degree of permanent disability, as a result of his injury; and that finding is adequately supported by the evidence.

In an action for personal injuries the damages are unliquidated and indeterminate in character and the assessment of the amount is generally for the jury. Where the damages are indeterminate a verdict should not be set aside as excessive unless it evinces passion, prejudice, partiality, corruption, or a mistaken view of law upon the part of the jury. *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410. No indication of the existence of any of these factors appears in this case and, under the rule just stated, the verdict can not be considered as excessive or set aside for that reason.

The judgment of the court of common pleas and the judgment of the circuit court, being free from prejudicial error, must be, and they are, affirmed.

*Affirmed.*