JAMES CANN, Judge.
These cases were heard by the Court IN the County Court Room of Mercer County, at Princeton, West *144 Virginia. The Keystone Hardware case was heard ON THE 18th DAY OF JULY 1950, AND THE TWO WRIGHT CASES WERE CONSOLIDATED AND HEARD ON THE FOLLOWING day. The Court is of the opinion that since the ACCIDENTS AND INJURIES COMPLAINED OF GROW OUT OF THE SAME STATE OF FACTS AND THAT THE EVIDENCE, WITH THE EXCEPTION OF THE QUESTION OF DAMAGES, IS SIMILAR IN ALL OF THESE CASES, THIS OPINION WILL SUFFICE TO STATE THE FINDING OF THE COURT IN ALL OF THE THREE CASES IN QUESTION.
At about eleven-thirty o’clock of the morning of February 7, 1950, Richard H. Spicer, accompanied by his father-in-law, was operating a 1939 Ford automobile, owned by his mother-in-law, on U. S. Rt. 52, and was proceeding east towards Freeman, Mercer county, West Virginia. When he was about a mile west of Freeman, proceeding along a straight stretch of said Rt. 52, he was being followed by a 1935 Ford automobile, owned and operated by Charles Wright, who was accompanied by his wife, Pauline Wright, and their infant child. At a point approximately halfway along this stretch of road, Wright struck the left rear of the Spicer car, careened across the highway and struck a truck owned by the Keystone Hardware & Furniture Company, a corporation, operated by Dempsey H. White, and which was proceeding west towards Welch, McDowell county, West Virginia. As a result of this three-way accident the Keystone truck, as well as the Wright automobile, was totally destroyed, and both Mr. and Mrs. Wright were painfully and severely injured. These claims were filed against the state road commission by the claimants, named in caption of this opinion, to recover from respondent damages for the losses and injuries sustained in this accident. The Federal Insurance Company, a corporation, is made a party in the Keystone case as subrogee of the Keystone Hardware & Furniture Company for the sum it had to pay by reason of this accident, under a $100.00 deductible automobile accident policy.
The testimony presented to the court substantially disclosed the following facts. Sometime during the latter part of De *145 cember, 1949, a slide occurred along tbe highway where this accident occurred. A large boulder, part of the slide, caused a depression or hole along the side of the road, which measured about one and a half to two feet in width and about two feet in length. The slide was removed in almost two weeks and repairs to permanently fix the depression or hole and other cracks in the highway were not made because of excessive rain (this was alleged in claimants’ petition and substantiated by the testimony); pending better weather conditions the depression or hole, above mentioned, was periodically filled with gravel.
It was shown by the testimony that on the day this accident occurred the highway was wet and somewhat muddy, which latter condition was caused by strip mining trucks entering the highway at or about 200 to 300 feet from where this accident occurred. Spicer testified that as he rounded a curve and entered and proceeded along the straight stretch of the highway, where this accident occurred, he was traveling about thirty or thirty-five miles per hour. When about halfway along the stretch he noticed a wet spot or something that looked like a hole along the side of the highway ahead of him. He decreased his speed or slowed down, as he says, to about twenty-five miles per hour and was about to slow down more when he was suddenly struck in the rear by the Wright car and knocked over and across what seemed to him to be a wet spot or something that looked like a hole in the highway. Spicer further testified that if he had not been struck by the Wright car he wouldn’t have had any trouble going on through. (R. p 48).
Wright testified that as he rounded the curve and entered the straight stretch he saw the Spicer car ahead and was following it at about a distance of twenty-five feet; he states he was proceeding cautiously because the highway was wet and muddy; he also states that he remarked to his wife that the road was slick as soap (r.p. 82). But the peculiar thing about the testimony offered by Wright is that he knows nothing about the accident. He does not know if and when Spicer slowed down, *146 and he does not know when, where or how he struck the Spicer car or the Keystone truck; all he remembers is that he was following the Spicer car and what was told him at the hospital about the accident.
White, the driver of the Keystone truck, testified that as he entered the straight stretch, proceeding west, he noticed the Spicer and Wright cars. He states that he noticed Spicer slowing down and that Wright, who was following Spicer, was having trouble with his car, or, as he states, the Wright car was acting kind of funny (r. p. 51); that it seemed that Wright was having trouble with his brakes for they “appeared to have caught or grabbed or something, and he started up onto the right of the berm, and it looked like when he got up there he pulled it back to the left of the road and hit the back end of the Spicer automobile and from that he collided with me.” (R. p. 59). White, in a written statement given to N. C. Stanley, a representative of the respondent, states that the (Wright) car was following too close for safety and when he had to apply his brakes his car apparently went out of control (R. p. 64). This statement White did not deny.
Charlie Watson, operating a Smith Transfer Company truck, on the day this accident occurred, testified that as he rounded the curve and entered the straight stretch proceeding east he observed the Wright car about two hundred feet ahead of him driving along like any other car, when suddenly Wright seemed to be dodging something, proceeded across the highway and struck the Keystone truck.
Loren Walker and N. C. Stanley, road supervisor and inspector, respectively, for the respondent in the district where this accident occurred, testified about the slide, the removal of the same, the depression or hole along the side of the road, and about several cracks in the highway caused by the slide. They testified that the depression or hole along the highway was only about three inches deep and was always filled with gravel pending better weather conditions to make permanent repairs. They *147 also testified that in their opinion the depression or hole along the highway in question never was considered a hazard necessitating the erection of barriers or warning signs.
Cohn Bird and Herschel Goade, two disinterested witnesses, testified that they both had traveled this particular stretch of road where the accident occurred, twice a day since the occurrence of the slide causing the depression or hole along the side of the highway. They both stated that the hole or depression, testified to in this case, was nothing serious; that it looked like the slide had pushed the pavement in four or five inches from the other level of the hard surface road, and that at no time did they have any trouuble negotiating this particular stretch of road.
McKinley Stacey, chief of police of the town of Bramwell, Mercer county, West Virginia, testified for both the claimants Mr. and Mrs. Wright. He was asked in effect whether the road condition at the scene of the accident was an apparent hazard. He replied that it was under certain conditions. Asked to explain those conditions he stated the condition of the road and weather conditions would govern that. On cross examination he in effect stated that the hazardous condition of the road which he meant was the fact that it was muddy and wet and that anyone operating their automobile as any prudent person would do then he would not say that the condition he spoke of would be a hazard.
We desire to make some particular reference to the testimony of Trooper O. E. Burner of the West Virginia department of public safety, who was the first witness called in both cases. Trooper Burner states that he arrived at the scene of the accident shortly after its occurrence and after a thorough investigation of the cause of the accident and speaking to the participants and other witnesses he conclued that the probable cause of the accident in this case was that the Wright vehicle was on the wrong side of the road. He states that the condition of the road at or near the scene of the accident was muddy. *148 He described the defect in the side of the road, at the scene of the accident, as being portion of the road surface broken which started at the berm and extended into the road in an oblong shape, with the widest portion being about a foot, and although he did not know the depth of the depression or hole that existed at that point, or make any investigation pertaining to the same, he stated that it created a hazardous condition. In his testimony given in the Wright cases he stated that after the slide had cleared away he did not recall receiving any reports that the road was hazardous; yet in spite of all this he testified in both cases that in his opinion if the drivers of the respective automobiles involved in this accident were obeying the law or driving their automobiles as required by law, this accident would not have happened. (Keystone r. p. 30; Wright r. p. 7).
At the conclusion of the hearing in the Keystone case the court stated the case had been submitted, subject to their investigation of the scene of the accident. Shortly thereafter the members of the court were taken to the scene of the accident and there viewed its surroundings. It was ascertained that the paved portion of the road at the scene of the accident, by actual measurements, was twenty feet, with a ten foot berm on the north side; that the road at the scene of the accident was a straight stretch extending at least one-fourth of a mile; that one third of a mile from the scene of the accident on the same side of the highway on which Spicer and Wright were traveling there appeared a large “Slippery when wet” sign which had to be passed by both drivers proceeding as they were before entering the straight stretch where the accident occurred, and that said sign had been at that place long prior to the day of the accident.
At the conclusion of the Wright cases counsel for all of the claimants summed up his position in these cases by stating that it was his theory that the proximate cause of the accident which resulted in the damages complained of was the failure of respondent to erect barriers or warning signs near the depression or hole which existed near the scene of the accident,. *149 and that by its negligence and omission of duty the state was liable. With this statement the court does not agree for the evidence in these cases as a whole conclusively and without a shadow or doubt disproves such theory.
Our Supreme Court has held in the case of Adkins, et al, v. Sims, 130 W. Va. 646:
“In the very nature of things the Road Commissioner must be permitted a discretion as to where the public money, entrusted to him for road purposes, should be expended, and at which point guardrails, danger signals and center lines should be provided, and the honest exercise of that discretion cannot he negligence.
(Underscoring ours.)
We cannot find that the road commission, its agent or em-polyees, abused such discretion for it is apparent from the evidence that they acted promptly in clearing the slide which occurred and because of the weather conditions, they did all that could be reasonably expected of them, and were duly diligent under the circumstances in keeping the depression or hole in the side of the road filled with gravel or other material so as to be passable by the traveling public.
Our Supreme Court also stated in the Adkins case, supra:
“We do not mean to be heartless or cynical when we say that every user of the highway travels thereon at his own risk. The State does not and cannot assure him a safe journey.”
Our court has held on several occasions, particularly the claim of Hutchison v. State Road Commission, 3 Ct. Claims (W. Va.) 217:
“No duty express or implied rests upon the state road commission of West Virginia to maintain the highways under its jurisdiction in more than reasonably safe condition for use in the usual manner and by the ordinary methods of travel; and the state does not *150 guarantee freedom from accident of persons traveling on such highways.”
In the case of Lent v. State Road Commission, 3 Ct. Claims (W. Va.) 253, our court held in effect.
“When the basis of a claim prosecuted against a state agency is negligence and omission of duty, and it is clearly established by the evidence that it is not a claim which the state as a sovereign commonwealth should discharge, an award will be denied.”
Chapter 17, art. 8, sec. 18 of the code of West Virginia provides:
“No person shall drive a vehicle upon a highway at a greater speed than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other condition then existing.
“Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon or entering the highway in compliance with legal requirements, and with the duty of drivers and other persons using the highway to exercise due care.”
In the case of Deputy v. Kimmel, 73 W. Va. 595, our Supreme Court in effect said:
“Because of the character of the vehicle and the unusual dangers incident to its use, a greater degree of care is required of the operators of automobiles while on the public highways, than is required of persons using the ordinary or less dangerous instruments of travel. They should exercise such care in respect to speed, warnings or approach and the management of their cars as will enable them to anticipate and avoid collision which the nature of the locality may reasonably suggest likely to occur.
*151 “In whatever manner or for whatever lawful purpose one uses a public highway, he owes a double duty: ■ (1) to avoid danger to himself by another having the right to such use, and (2) to avoid infliction of an injury upon such other person. Both must exercise such care as reasonably prudent persons would exercise under the same circumstances and conditions in order to avoid being injured or causing injury.
“A person must run his car only at such speed as will enable him to timely stop to aviod collision. If he fails to do so, he is responsible for the damage he thereby causes.”
We believe the law in this state to be quite clear. In this case it was clearly shown that proper signs were installed advising the traveling public of the danger of the highway in the event of wet weather. Spicer and Wright had ample opportunity to observe the condition of the road upon entering the straight stretch where this accident occurred. It then and there became the duty of both to operate their vehicles as any ordinarily prudent person would have done under the circumstances and conditions of the road. We believe that the duty Spicer owed Wright and the duty Wright owed Spicer and the Keystone Hardware vehicle to operate their respective automobiles in a prudent and lawful manner, considering the circumstances and conditions of the highway on the day this accident occurred, was far superior to any duty which 'the respondent may have owed either of them.
Who, in all of these cases, has testified and proved to the satisfaction of the court that the depression or hole in the side of the road was in any way responsible for the accident? In fact it was clearly shown that even if the hole or depression had not existed at the time of the accident, under the same circumstances which occurred, the accident would have happened anyway for Spicer clearly stated that he did not know what was ahead of him that caused him to slow down, whether it was a wet spot or hole. He wasn’t taking any chances so he *152 acted as any ordinarily prudent person, under the same circumstances, would have done. Although it was intimated that Spicer came upon the depression or hole suddenly causing him to come to an abrupt stop thereby causing Wright to immediately swerve to the side and damage the Keystone truck, this was not borne out by the evidence. All of the witnesses who saw this accident testified that Spicer was in the act of slowing down when Wright struck him in the rear, careened across the road and damaged the Keystone truck. Although no negligence was shown on the part of the driver of the Keystone truck, we are convinced by all of the evidence that Wright was the principal person at fault. He knew nothing, or would not tell, of what happened. To strike a truck on the opposite side from which he was traveling with such force as to demolish it as well as his own car, and also cause the severe injuries to himself and his wife as were shown, only proves the fact that Wright was both going too fast and did not have his car under control. Suffice it to say that the claimants, and each of them, have not only failed to prove that a depression or hole in the side of the highway was the proximate cause of their accident and resulting injuries, but have wholly failed to establish any claim against the respondent. In order for claimants, or either of them, to be entitled to an award they must establish facts and circumstances from which it appears that an appropriation of the public revenues should be made by the Legislature. This they, or either of them, have wholly failed to do. Therefore, an award is denied to each of the claimants in these cases and their respective claims are dismissed.